**John W. YOUNG, Commissioner of Labor of the Commonwealth of Kentucky, etc., Appellants,**

v.

**KERN'S BAKERY, INC., et al., Appellees.**

Court of Appeals of Kentucky.

March 31, 1972.

Rehearing Denied June 23, 1972.

Thomas R. Emerson, Dept. of Labor, Frankfort, Gemma M. Harding, Louisville, for appellants.

Charles G. Cole, Barbourville, Coleman D. Moberly, London, J. Keller Whitaker, Workmen's Compensation Bd., Frankfort, for appellees.

OSBORNE, Judge.

This is an appeal by the Special Fund from a judgment of the circuit court which affirmed an award of the Workmen's Compensation Board dated March 8, 1971, granting claimant compensation for total and permanent disability all to be taxed against the Special Fund. The proceedings are lengthy and we shall set out only so much of the facts as we believe are pertinent to our decision.

On October 21, 1968, James W. Farris filed an application for an adjustment of claim with the Workmen's Compensation Board. The pertinent allegations of his application were that he was operating a machine known as a bun divider, cutting dough; that the machine was very dusty and that on October 22, 1967, while operating this machine he suffered a heart attack. He further alleged that breathing of flour dust caused an aggravation of his pulmonary emphysema and chronic bronchitis. In the part of the application requiring the claimant to give the nature of the injury or disease, he stated:

"I have arteriosclerosis chest disease, pulmonary emphysema and chronic bronchitis."

The case was duly set for hearing; three witnesses were called by the claimant and none by the defendant Kern's Bakery, Inc. The defendant testified for himself and submitted the depositions of Dr. B. H. Wells and Dr. Charles C. Smith. We shall summarize the pertinent portions of the testimony of all three.

Farris stated that he was 59 years of age and that he had been working for Kern's Bakery for approximately 19 years doing general work. For the last five years, he had operated machinery in a bakery that cut dough. He testified that on October 22, 1967, he quit work for the bakery because he had been having trouble with his chest hurting; that sometimes the machines would fog up with flour and it would choke him up and he would start coughing. He was asked:

"Q. 50. Now, you say you had been noticing that for the last year before October 22, 1967?

A. Yeah, a year at the least."

He further testified that on various occasions he had called his foreman's attention to the fact that he had a hurting in the chest. He stated that on the day in question, October 22, 1967, he was running the machine and "I just blacked out. I had chest pains, and the foreman come by and I said 'buddy, I just can't take it no longer, I am sick' and I went in the dressing room and laid down on the bench." He stated that after the attack he contacted Dr. Wells at Corbin and was placed in a hospital in Louisville where he stayed two nights and three days and that he is now unable to perform manual labor.

Dr. B. H. Wells testified that he is a general practitioner; that he first saw Farris in March of 1965 for a stomach upset and that he started treating him in October of 1967 for chest pains which had occurred at work on the day before. His diagnosis of Farris was that he had chronic bronchitis and pulmonary emphysema, along with arteriosclerotic cardiovascular disease and hypertensive cardiovascular disease. He testified that in his opinion the major cause of the disease was "his work, a chronic inhaling of dust or in this particular case flour dust." He was of the opinion that the claimant was totally disabled. The doctor was asked:

"Q. 25. Now, have you any way of determining, Doctor, how long pre-vious to 1967 that Mr. Farris contracted this condition that you found?

A. No sir. It is a slowly progressive thing, it is something—I think what precipitated the whole thing was the lobar pneumonia.

Q. 26. Lobar pneumonia?

A. Yes, sir.

Q. 27. What was the cause of the lobar pneumonia?

A. Probably this where he inhaled an excessive amount because in lobar pneumonia it closed off practically one section of the lung practically was consolidated, was almost solid." (sic)

The next witness was Dr. Charles Smith who testified that he specializes in internal medicine; that the patient had been referred to him by Dr. Wells and that he had conducted a complete examination. He diagnosed the claimant's condition as being chronic bronchitis and pulmonary emphysema and fibrosis, also arteriosclerosis, heart disease with angina pectoris. He was asked:

"Q. 29. Over what period of time, in your opinion, when you first examined Mr. Farris, which was in January of '68, had this pulmonary emphysema, bronchitis been developing?

A. Well, this could not be ascertained with any accuracy. I would say that taking an ordinary case, this could have been occurring anywhere from five years to twenty, to thirty years in duration.

Q. 30. Now, is there any connection with the work history that the Plaintiff gave to you while working for Kern's Bakery and with his present disability?

A. Well, the possible relationship is that with inhalation of the sub-

stances at work, he would have had irritation of the bronchial lining and this is an aggravation of his chronic bronchitis, and the other possibility is that with inhalation of dispersed oil in the air, this could have been deposition of oil droplets in the lung tissue which produced a change on X-ray compatible with fibrosis.

Q. 31. Assume that the Plaintiff, James W. Farris, prior to October the 22nd, 1967 had worked at Kern's Bakery for nineteen years or more and that he had continually breathed flour dust; what effect, if any, would this have on the chronic bronchitis and pulmonary emphysema?

A. Well, the presence of flour dust in the inhaled air could result in irritation of preexisting bronchitis. The response of the body to irritation is the secretion of mucus and watery material, serous material which can further increase airway obstruction resulting in coughing, thereby resulting in increased pressure in the air passages and could thereby produce more rupture of air sacs.

Q. 32. Well, would it be your opinion that while he was working there at Kern's Bakery that he had a preexisting condition which was nondisabling, of bronchitis?

A. Yes, this is certainly possible, that he did have a preexisting condition which was not disabling.

Q. 33. Now, would the continuous working, assuming that he did work at Kern's Bakery for nineteen years and had a preexisting condition of bronchitis and heart disease, and breathing flour dust and oil, would that condition or could it or would it cause and bring about the disease of pulmonary emphysema?

A. Well, yes, this could aggravate preexisting bronchitis and emphysema

to the point of disability through the mechanism of increased cough and air obstruction induced by irritation."

The doctor further testified concerning the question of occupational disease as follows:

"Q. 61. Would you state that pulmonary emphysema is a disease to which the public at large is exposed, regardless of occupation?

A. Yes, sir.

Q. 62. Would you say the same thing is true of chronic bronchitis?

A. Yes, sir.

Q. 63. Would you say the same thing is true of fibrosis?

A. Yes, sir.

Q. 64. And, certainly, you would say the same thing, I take it, is true of arteriosclerotic heart disease?

A. Yes, sir.

Q. 65. So that everything you found in connection with Mr. Farris is a disease which the public generally is exposed to and which can come about from many different sources?

A. Yes, sir.

Q. 66. In other words, it's not peculiar to the baking industry or the flour industry or anything of that nature?

A. That's correct, sir."

Upon the basis of the foregoing testimony the Board found as fact that Farris during the course of his employment was exposed to flour dust and sprays of oil and as a result of this he suffered a heart attack on October 22, 1967, and became totally and permanently disabled as a result of the attack. This order was appealed to the circuit court and was set aside by the court because there was no

evidence in the record to support the Board's finding that Farris had suffered a heart attack. The court further found that there was substantial evidence to support the finding of the Board that Farris was totally disabled due to bronchitis, emphysema and arteriosclerotic heart disease. The court was further of the opinion that the diseases were preexisting and nondisabling, and that work aggravated and brought into disabling reality Farris' condition by continuous inhalation of the flour dust. On the basis of these findings the case was remanded to the Board with instructions to make the Special Fund a party. No appeal was taken from this order by either of the parties. It might be well to pause at this point in the statement of the facts to note that the circuit court was correct in finding that the evidence did not support the Board's finding that Farris had suffered a heart attack. In fact there is no evidence in the record at all that he suffered a heart attack as was found by the Board; therefore, this portion of the court's order was completely correct and as there was no appeal from it, it is now binding.

Upon remand of the case to the Board, Dr. Albert Olash of Louisville, Kentucky, was appointed pursuant to KRS 342.121 to examine the claimant and to report to the Board. The doctor made such examination and filed his report as follows:

"(1) Prior to October 22, 1967, the patient had a significant kyphosis and a tendency toward pulmonary emphysema and bronchitis which was apparently not disabling at that time.

(2) Immediately prior to October 22, 1967, I am unable to determine that there was any permanent disability otherwise to the plaintiff's body as a whole by virtue of his physical condition.

(3) The pulmonary emphysema and bronchitis which was nondisabling at the time was capable of being aroused and brought into disabling reality by reason of subsequent dust inhalation and as a result of this, it is my impression that the patient is disabled 50%.

(4) Assuming that the plaintiff had no disability or dormant nondisabling disease prior to October 22, 1967, the dust inhalation would not have caused any subsequent injury.

(5) Plaintiff now suffers a disability of 50% to his body as a whole.

(6) Non applicable.

(7) The percentage of the plaintiff's present disability resulting from arousal into disabling reality of the dormant nondisabling disease by the occurrence of the alleged injury of October 27, 1967, is 100%.

I am unable to establish a diagnosis of definite heart disease in this patient at this time."

Specific objections were made to the report by the Special Fund, as follows:

"1. Dr. Olash rates the claimant as 50% disabled and attributed this disability to pulmonary emphysema and bronchitis.

2. Dr. Olash was of the opinion that these diseases became disabling as a result of dust inhalation by the claimant in his employment.

3. In order for the Special Fund to incur any liability, it must be shown that there was a preexisting dormant nondisabling disease condition aroused by trauma or that the claimant suffers from an occupational disease.

4. Dr. Olash did not diagnose any preexisting heart disease which was aroused in the course of claimant's occupation.

5. Neither pulmonary emphysema nor bronchitis are occupational diseases

since the public generally, without regard to occupation, age or sex, may contract either or both of them with or without exposure to dust inhalation."

Following the exceptions the case was again submitted to the Board and in its opinion and award the Board recited the facts of the case and entered an order which:

1. Overruled the objections to Dr. Olash's report.

2. Sustained the motion to strike the objections to Dr. Olash's report.

4. Awarded the claimant compensation for total and permanent disability including medical expense not to exceed $3500.

This award was again appealed to the circuit court and there affirmed and is presently before us upon appeal from that order. We are of the opinion the award will have to be set aside.

KRS 342.120 permits the Special Fund to be made a party to a proceeding only if one or the other of the following conditions exists:

"(a) The employe is disabled, whether from a compensable injury, occupational disease, preexisting disease, or otherwise, and has received a subsequent compensable injury by accident, or has developed an occupational disease;

(b) The employe is found to have a *dormant* non-disabling disease condition which was aroused or brought

into disabling reality by reason of a subsequent compensable injury by accident or an occupational disease." (Emphasis added).

The total evidence in this case, all of which was submitted by the claimant, shows conclusively that the conditions from which he suffered were as common to the general public as to one working in any given occupation and, therefore, were not preexisting occupational diseases.[1] Therefore, the employee could recover only if the Board found him to have a *dormant* nondisabling disease condition which was aroused or brought into disabling reality by reason of a subsequent compensable injury by accident or an occupational disease. There is not one bit of proof in the record that the claimant's condition at any time was dormant and the circuit court in its findings in the first proceeding before it rather conspicuously failed to use this word. There was no accident which could have aroused a pre-existing condition therefore, the pre-existing condition even if it were dormant would have to be aroused by an occupational disease which the record fails to reveal. The action of the Board in striking the objections to Dr. Olash's report, so far as we are able to discern, was completely arbitrary and based on no rule of law of which we have knowledge.

For the foregoing reasons the judgment of the circuit court in affirming the award is reversed and that court is directed to enter an order directing the Workmen's Compensation Board to dismiss the proceedings.

All concur.

[1]. This case was filed and the hearing held prior to the 1970 amendment to KRS 342.-316. Prior to the amendment the statute defined occupational disease as follows: " 'Occupational disease' as used in this chapter means a disease arising out of and in the course of the employment.

Ordinary diseases of life to which the general public is equally exposed outside of the employment shall not be compensable, except where such diseases follow as an incident of an occupational disease as defined in this section."