Rohner *v.* Fox Products et al., Appellants.

Argued March 24, 1949. Before RHODES, P. J., HIRT, RENO, DITHRICH, ARNOLD and FINE, JJ. (ROSS, J., absent.)

*George H. Detweiler*, with him *Robert A. Detweiler*, for Fox Products and Employers Liability Assurance Corporation, appellants.

*S. H. Torchia*, with him *Ralph H. Behney*, and *T. McKeen Chidsey*, Attorney General, for Commonwealth, appellant.

*David L. Ullman*, for appellee.

OPINION BY RHODES, P. J., July 15, 1949:

These appeals are from the judgment which was entered on an award in favor of the widow of the deceased employe; this is to be paid jointly in stated proportions by defendant employer and its insurance carrier, and by the Commonwealth of Pennsylvania.

Defendant employer was engaged in manufacturing lead plates for batteries. Deceased was a lead plater in the employment of defendant. That there was a lead hazard is not in dispute.

The questions presented by these appeals may be stated as follows: (1) Is there competent and substantial evidence in the record sufficient to sustain the finding of the Workmen's Compensation Board that deceased died of pulmonary tuberculosis which was aggravated and accelerated by lead poisoning? (2) Is compensation payable, under the Pennsylvania Occupational Disease Act of June 21, 1939, P. L. 566, 77 PS §1201 et seq., where the occupational disease, lead poisoning, is a contributory and accelerating cause of death? (3) Was deceased exposed to a lead hazard for a period of five years or more so as to make the Commonwealth liable for the proportioned share of the compensation?

Deceased's employment with defendant began on November 10, 1936. He continued to work for defendant until January 19, 1942. His work consisted principally of lead plating. Until the summer of 1941, deceased's health had been good, and he weighed about 160 pounds. During the six-month period prior to deceased's death on February 3, 1942, he lost about 50 pounds in weight, and developed numerous symptoms which were admittedly typical of lead poisoning. There was a decided loss of appetite; his complexion became sallow and jaundiced; his lips became pale; his finger nails showed black marks; there was a dark or lead line at the base of the teeth; there were tremors of the hands and lack

of coördination of the lower extremities; he frequently suffered severe abdominal pains; he suffered from nausea; he had a metallic taste in his mouth; he was fatigued, nervous, and unable to sleep. Deceased's physician, Dr. Jacob K. Marks, examined him. Dr. Marks testified that deceased's symptoms were those of lead poisoning, and he made a diagnosis of lead poisoning. He further testified that the lead poisoning aggravated deceased's condition and accelerated his death. A representative of defendant arranged for deceased's admission to the Germantown Hospital, where he died on February 3, 1942. The cause of death was given in the hospital record as pulmonary tuberculosis. The tentative diagnosis on his admission to the hospital was chronic lead poisoning, pulmonary tuberculosis, chronic pneumonia, malnutrition. One of the experts called by defendant agreed that chronic lead poisoning would aggravate tuberculosis and hasten its progress, and that deceased's symptoms "are all symptoms that normally and usually accompany lead poisoning."

We think the board's finding that deceased's "physical condition as a result of lead poisoning caused by his exposure in the course of his employment with the defendant caused him to become totally disabled, and he remained in that condition until February 3, 1942, on which date he died from pulmonary tuberculosis, which was aggravated and accelerated by lead poisoning," is based on competent and substantial evidence sufficient to sustain it. Section 422 of the Pennsylvania Occupational Disease Act of June 21, 1939, P. L. 566, 77 PS §1522, provides that: ". . . all findings of fact shall be based only upon sufficient, competent evidence to justify them." This is the same standard required by section 422 of the Workmen's Compensation Act of June 2, 1915, P. L. 736, as last amended by the Act of June 21, 1939, P. L. 520, §1, 77 PS §834. Findings of fact made by the board are conclusive, and cannot be

disturbed on appeal if supported by "sufficient, competent evidence," or, as we have said, by "competent and substantial evidence in the record sufficient to sustain" the findings. *Osterritter v. Moore-Flesher Hauling Co.,* 150 Pa. Superior Ct. 236, 239, 27 A. 2d 262; *Plaugher v. American Viscose Corp.,* 151 Pa. Superior Ct. 401, 409, 30 A. 2d 376; *Kelemon v. Reiber,* 161 Pa. Superior Ct. 169, 172, 53 A. 2d 903. Where the record contains such evidence, the credibility of the witnesses and the weight of conflicting evidence on factual issues are exclusively for the compensation authorities. *Kelemon v. Reiber,* supra, p. 172; *McGarvey v. Butler Consolidated Coal Co.,* 157 Pa. Superior Ct. 353, 357, 43 A. 2d 623. It was for the board to appraise the medical testimony in this case, and resolve any conflict therein. *Mouhat v. Board of Public Education of Pittsburgh,* 159 Pa. Superior Ct. 423, 427, 48 A. 2d 20. The board did not exceed its power in exercising that function in respect to the testimony before it. See *Kline v. Kiehl,* 157 Pa. Superior Ct. 392, 396, 43 A. 2d 616; *Lusk v. Monongahela City Water Co.,* 164 Pa. Superior Ct. 354, 360, 64 A. 2d 670; *Puzio v. Susquehanna Collieries Co.,* 126 Pa. Superior Ct. 488, 492, 191 A. 222; *Baumeister v. Baugh & Sons Co.,* 142 Pa. Superior Ct. 346, 350, 16 A. 2d 424.

The second question raised on this appeal is purely legal in character. It is argued that, even though it be conceded that deceased died of pulmonary tuberculosis aggravated and accelerated by lead poisoning, the death is not compensable under the Pennsylvania Occupational Disease Act of 1939 for two reasons: (1) Section 108 of the Act, 77 PS §1208, which enumerates certain compensable occupational diseases, makes no express provision for a situation where such diseases may act as contributory or aggravating causes of disability or death in conjunction with other noncompensable conditions and diseases; and (2) the qualification in section 301 (e) of the Act, 77 PS §1401 (e), applies to lead poison-

ing. We are not persuaded by the argument of counsel. Section 301 (a) of the Act, 77 PS §1401 (a), provides in part: "When employer and employe shall by agreement, either express or implied, as hereinafter provided, accept the provisions of article three of this act, compensation for disability or death of such employe, *caused by occupational disease* arising out of and in the course of his employment, shall be paid by the employer, . . ." (Italics supplied.) Section 301 (c) of the Act, 77 PS §1401 (c), states, inter alia, that: "Wherever death is mentioned as a cause for compensation under this act, it shall mean only death *resulting* from occupational disease . . ." (Italics supplied.) In these sections there is no requirement that death be solely caused by the occupational disease, or that the occupational disease itself must be the active agency which terminates life. Likewise, these sections do not exclude death as compensable where the occupational disease is the contributory or accelerating cause. The important factor is that there shall be a causal relationship, of whatever character, between the disease and the death. See *Fitzgerald v. Atlas Asbestos Co.*, 158 Pa. Superior Ct. 151, 153, 44 A. 2d 316; *Williams v. Susquehanna Collieries Co.*, 148 Pa. Superior Ct. 540, 543, 25 A. 2d 751. Neither does section 108 of the Act, 77 PS §1208, which sets forth the various occupational diseases (including lead poisoning) which are compensable, contain any limitation as to causation. Limitations or distinctions are found only in section 301 (e) of the Act, 77 PS §1401 (e), which, relating specifically to silicosis, anthraco-silicosis, and asbestosis, provides as follows: "Compensation shall not be payable for partial disability due to silicosis, anthraco-silicosis, or asbestosis. Compensation shall be payable, as otherwise provided in this act, for total disability or death caused solely (as definitely distinguished from a contributory or accelerating cause) by silicosis, anthraco-silicosis, or asbestosis, or by sili-

cosis, anthraco-silicosis, or asbestosis, when accompanied by active pulmonary tuberculosis." There is nothing in this section, and we find nothing in other parts of the Act, which would make the provisions of this section applicable to any occupational disease except the three named therein. An analogous situation was presented in *Plaugher v. American Viscose Corp.*, supra, 151 Pa. Superior Ct. 401, 30 A. 2d 376. There the employe died of rheumatic heart disease and mitral stenosis (noncompensable diseases), accelerated by carbon disulphide poisoning (a compensable occupational disease). We sustained an award of compensation to the claimant, and said (page 407 of 151 Pa. Superior Court, page 379 of 30 A. 2d) : "We must note here that unlike disability or death due to silicosis, anthraco-silicosis, or asbestosis, compensation is payable where the occupational disease—due to carbon disulphide et al.—is a contributory or accelerating cause. See Williams v. Susquehanna Collieries Co., 148 Pa. Superior Ct. 540, pp. 541-543, 25 A. 2d 751. The provision excluding contributory or accelerating causes as the basis for compensation for disability or death due to silicosis, anthraco-silicosis and asbestosis (see Stauffer v. Hubley Mfg. Co., 151 Pa. Superior Ct. 322, 30 A. 2d 370), does not apply to carbon disulphide and the other diseases catalogued in section 2, paragraphs (a) to (j) inclusive." See *Watkins v. National Electric Products Corp.*, D. C., W. D. Pa., 69 F. Supp. 596, 598; 3d Cir., 165 F. 2d 980, 983. Although the *Plaugher* case was decided under the Act of July 2, 1937, P. L. 2714, repealed and superseded by the Act of June 21, 1939, P. L. 566, No. 284, now in force, the two acts do not differ in any respect material to the present controversy, and that decision therefore is of controlling authority in the disposition of the case now before this Court.

The last question presented involves the sufficiency of the evidence to warrant a finding and conclusion by

the compensation authorities that deceased was actually exposed to a lead hazard for a period of five years or more. The Commonwealth can be held liable for a part of the compensation only where the occupational disease has developed to the point of disablement after an exposure of five or more years. Sections 308 (a), 77 PS §1408 (a), 301 (g), 77 PS §1401 (g).

Deceased was first employed by defendant on November 10, 1936, more than five years before his disability and death. This fact alone would be insufficient because it is necessary to show exposure to the hazard in addition to the employment. *Bingaman v. Baldwin Locomotive Works, Inc.*, 159 Pa. Superior Ct. 29, 46 A. 2d 512. Claimant testified that deceased learned his trade as an electroplater at defendant's plant. Deceased's foreman at the time of death testified that he himself had worked for defendant for fourteen years (since 1932); that he first worked on the day shift but was transferred to the night shift about ten years before the date of the hearing (1936); that he was made foreman of the night shift about nine years before the date of hearing (1937); that deceased was working on the day shift when he became foreman; that about four years before his death deceased was transferred from the day shift to the night shift (1938), where he worked for the remainder of his time with defendant. This witness further testified: "When he [deceased] first got the job he had to be a helper. For how long he was a helper, I don't know. He worked on the day shift and then I got him, see, and then I made a tank man out of him." Another witness, employed by defendant, who worked with deceased during 1939, 1940, and 1941 described deceased as a lead plater, and testified that he performed all the duties in connection with preparing the work for lead plating and with the plating process itself. It does not definitely appear in the record whether or not there was any difference in the degree of exposure

to a lead hazard on the part of a helper and on the part of a "tank man." It appears, however, that deceased was a helper or lead plater in the plating department of defendant's plant during the period of his employment, and that there was a lead hazard in that department. We are of the opinion that there was sufficient evidence from which the board might properly draw the inference that as a helper or as a plater or tank man deceased was exposed to a lead hazard in the employment in which he was engaged, and that this exposure extended over a period of more than five years.

Judgment is affirmed.