258

Walker *v.* Chestnut Hill Hospital et al.,
Appellants.

Argued March 20, 1969. Before WRIGHT, P. J.,
WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING,
and CERCONE, JJ.

*Frederick W. Anton, 3rd,* for appellants.

*Daniel M. Rendine,* Special Assistant Attorney General, with him *Clyde M. Hughes, Jr.,* Assistant Attorney General, and *William C. Sennett,* Attorney General, for Commonwealth, appellee.

OPINION BY WATKINS, J., April 16, 1969:

This is a workmen's compensation appeal in which an award of benefits was made to the claimant, Bertha W. Walker, who was found by the referee and the Board to be totally disabled as the result of exposure to the occupational disease of tuberculosis while employed as a nurse by the Chestnut Hill Hospital, the defendant-appellant.

The said defendant-appellant and the Pennsylvania Manufacturers' Association Insurance Company, the hospital's insurance carrier, also a defendant-appellant, appealed from the decision of the Board contending that the order of the Board against the defendant-employer only was error and should have been against the defendant-employer and the Commonwealth of Pennsylvania jointly under Section 308(a) of the Occupational Disease Act of 1939, 77 P.S. 1408(a) on a 60% to the employer and 40% to the Commonwealth of Pennsylvania basis, in that the exposure to the disease was for a period of more than five (5) years. The court below affirmed the award as made by the Board.

Tuberculosis was not one of the original occupational diseases enumerated by the Act. It was included by an amendment in the Act of 1951, July 19, P. L. 1089, Paragraph 1, 77 P.S. 1208(m), which reads as follows: "The term 'occupational disease', as used in this act, shall mean only the following diseases: . . . (m) Tuberculosis in the occupation of nursing in hospitals or sanataria involving exposure to such diseases."

The passing of the Occupational Disease Act met with great opposition among the hazardous occupation

employers of Pennsylvania. It was met with lawsuits and collective bargaining disputes before finally being accepted by industry. One of the ways in which industry was persuaded to accept it was the inclusion in the act of certain payments by the Commonwealth. This concern of the legislature was brought about by the fear that the financial condition of certain industries having occupational hazards might be jeopardized. The payments by the Commonwealth continued to be included in the act although amendments were made changing the percentages. The act presently provides for payment by the Commonwealth of 40% and the employer 60% of the award under conditions set forth in the act.

The facts in this case, as found by the compensation authorities, show that this claimant was exposed to the hazard of contracting the occupational disease of tuberculosis more than five (5) years before disability while employed as a nurse by the defendant-appellant hospital.

The facts as found by the compensation authorities further show that while the claimant was so exposed to the hazard for more than five (5) years, the claimant developed tuberculosis during the period from 1958 to December 25, 1960, when she became disabled.

We do not believe that the finding of causation within a two year period affects the determination of the Commonwealth subsidy.

The pertinent section of the Occupational Disease Act of 1939, as amended, with which we are concerned is the section dealing with length of hazards under which claim percentages are paid by the Commonwealth. This is Section 308(a), 77 P.S. 1408(a), which reads as follows: "When compensation is awarded because of disability or death caused by silicosis, anthraco-silicosis, coal worker's pneumoconiosis, asbes-

tosis, or any other occupational disease which developed to the point of disablement only after an exposure of five or more years, the compensation for disability or death due to such disease shall, except as otherwise provided in subsection (g) of section 301, be paid jointly by the employer and the Commonwealth and the employer shall be liable for sixty per centum of the compensation due and the Commonwealth forty per centum."

The exception to the act is set forth in Section 301(g), 77 P.S. 1401(g), and reads as follows: "The employer liable for the compensation provided by this article shall be the employer in whose employment the employe was last exposed to the hazard of the occupational disease claimed, regardless of the length of time of such last exposure: Provided, That when a claimant alleges that disability or death was due to silicosis, anthraco-silicosis, coal worker's pneumoconiosis, asbestosis or any other occupational disease which developed to the point of disablement only after an exposure of five or more years, the only employer liable shall be the last employer in whose employment the employe was last exposed to the hazard of such occupational disease during a period of six months or more: And provided further, That in those cases where disability or death is not conclusively proven to be the result of such last exposure, all compensation shall be paid by the Commonwealth. An exposure during a period of less than six months after the effective date of this act shall not be deemed an exposure . . ."

There is nothing in the act that requires the occupational disease to develop from the total exposure. Some diseases, and particularly those first included in the act, such as silicosis, are insidious diseases that progress slowly to total disability; while others, like some forms of tuberculosis may incubate from one in-

cident of exposure and quickly reach disability. The purpose of the section we are interpreting was to set exposure periods so that hazardous industries would have full knowledge that claims based on long time exposure would be subsidized by the Commonwealth. This served two ends, one, it persuaded the hazardous industries and particularly self-insurers to accept the act; and two, it encouraged insurance carriers to cover the risk.

The section has nothing to do with causation. It is clear and unambiguous. Hence, there is no occasion to resort to rules of statutory construction; it must be given its plain and obvious meaning. We are without power to legislate by making it read "effective exposure" by the addition of the word "effective" as the Board and the court below did to arrive at the order made. *Czepukaitis v. Philadelphia and Reading Coal and Iron Company*, 203 Pa. Superior Ct. 493, 201 A. 2d 271 (1964).

In Section 301(g), supra, the legislature provided that where there is multiple employment the Commonwealth is liable except "in those cases where disability or death is not conclusively proven to be the result of such last exposure." So it is clear that when the legislature intended to make the result of a particular exposure an element essential to the determination of the rights of the Commonwealth and other defendants it literally and expressly used words of causation.

Causation is an essential element of the claimant's case. The causal connection between the exposure to the occupational disease and the claimant's disability is part of the claimant's burden of proof. *Rohner v. Fox Products*, 164 Pa. Superior Ct. 610, 67 A. 2d 605 (1949).

The act itself sets forth the causation requirements. Section 301(c), 77 P.S. 1401(c), reads as follows:

"Compensation for the occupational diseases enumerated in this act shall be paid only when such occupational disease is peculiar to the occupation or industry in which the employe was engaged and not common to the general population. Wherever compensable disability or death is mentioned as a cause for compensation under this act, it shall mean only compensable disability or death resulting from occupational disease . . . ."

And Section 301(a), 77 P.S. 1401(a), provides as follows: "When employer and employe shall by agreement, either express or implied, as hereinafter provided, accept the provisions of article three of this act, compensation for disability or death of such employe, caused by occupational disease, arising out of and in the course of his employment, shall be paid by the employer, . . . ."

The section being interpreted is intended by the legislature to fix length of hazards which would shift arbitrarily a proportion of the cost of coverage to the Commonwealth in cases of long exposure and did not remove diseases which are not progressive in nature from its application.

In the court below the Commonwealth contended that the claimant's two day a week employment extending over a period of six (6) years did not add up to a total of more than five (5) years. We agree with the court's dismissal of this argument: "anyone who comes in contact with contagion even two days a week during five (5) consecutive calendar years or more certainly is exposed for the period contemplated by the act." *Milavech v. Berwin-White Coal Company,* 180 Pa. Superior Ct. 194, 119 A. 2d 652 (1956).

The record is remanded to the court below for the purpose of modifying the order as made by the Workmen's Compensation Board so that judgment may be

264

entered jointly against the defendant-appellant and the Commonwealth on a 60% to the employer and 40% to the Commonwealth basis, instead of solely against the defendant-appellant, in accordance with this opinion.