Spaulding Bakeries, Inc. and Utica Mutual Insurance Company, Insurance Carrier, Appellants, *v.*
Charles R. Williams, Appellee.
Commonwealth of Pennsylvania, Department of Labor and Industry, Bureau of Occupational Injury and Disease Compensation, Appellant, *v.*
Charles R. Williams, Appellee.

Argued April 4, 1974, before Judges CRUMLISH, JR., MENCER and ROGERS, sitting as a panel of three.

*J. P. Harris, Jr.,* with him *John H. Kennedy* and *Harris, Johnston & Maguire,* for appellants, employer and insurance carrier.

*William R. Mosolino,* with him *Samuel C. Vary,* Assistant Attorney General, for appellant, Commonwealth.

*Israel T. Klapper,* with him *Thomas J. Carlyon* and *Falvello, Ustynoski, Giuliani and Bernstein,* for appellee.

OPINION BY JUDGE CRUMLISH, JR., July 31, 1974:

Consolidated here are appeals from an order of the Court of Common Pleas of Luzerne County affirming a decision and order of the Workmen's Compensation Appeal Board which granted compensation to a claimant, Charles K. Williams, for total disability attributed to pulmonary emphysema and fibrosis from the inhalation of flour dust during the course of his employment by Spaulding Bakeries, Inc. The Board concurred in a referee's apparent conclusion that claimant was entitled to compensation because his condition is an occupational disease under Section 108(n) of The Pennsylvania Occupational Disease Act, Act of June 21, 1939, P. L. 566, *as amended,* 77 P.S. §1208(n). The issue for our consideration is whether there is competent evidence of record to support this determination. *Allegheny Pittsburgh Coal Company v. Bernard Ostroski,* 12 Pa. Commonwealth Ct. 1, 315 A. 2d 895 (1974).

Claimant filed the instant occupational disease claim petition on May 6, 1969, alleging total disability from "Baker's Asthma"[1] as of April 21, 1969, the last

---

[1] At the time of the hearing before the referee, the petition was amended to read: "The cause of my disability is occupational disease, caused by working in air (sic) exposure in the bakery industry," instead of "Baker's Asthma."

day of his employment by Spaulding Bakeries, Inc. He had been employed by Spaulding in various capacities from 1934 to the date of disability, interrupted only by two years of military service. The claimant's work history as well as the genesis of his present disability are fairly represented by the testimony of Dr. H. L. Auerbach, a medical expert called on behalf of the claimant.

"Q. Can you give us a history of this man's disability?

"A. Yes, he had been ill for a number of years when I first saw him in the hospital in February of 1968. We concluded at that time that he was disabled from chronic pulmonary fibrosis and emphysema. When I saw him again for examination on June 24, 1970, we confirmed that finding. He had all the classical and clinical signs and symptoms. His total vital capacity was 35%; the first second was 53% and the maximum breathing capacity was 25%. It is my opinion that he is totally and permanently disabled from pulmonary fibrosis and emphysema, and the question was raised about the cause of this, in view of the fact that he had worked in the bakery for many years. The history that I obtained from the man was that he had held various jobs in the Spaulding Bakery, beginning in 1935 and ending after twenty-five years; that during that time, he spent eight years on the road as a salesman. For the rest of that time, he was inside the plant, including five years from 1939 to 1944, when he was actively engaged in dumping flour from flour bags into a big blender, which he did for his entire eight-hour shifts, and then, in his most recent job, he was exposed to flour by going in and out of the plant, where the flour was in average concentration, even though he did not work in the plant.

"Q. Did you have the benefit of an x-ray, Doctor?

"A. I did not take an x-ray on this last visit. He had had several in his hospitalizations, done by Dr. Des-

sen and Dr. Conahan, and they have all shown pulmonary emphysema on the x-ray.

"Q. Do you have an opinion as to his disability?

"A. I think he is totally and permanently disabled from his lung disease and this is directly related to his work in the bakery."

Although the testimony of Dr. Auerbach was the only medical evidence presented, and the referee and the Board, accepted as credible his opinion as to the causation of claimant's disability, we must reluctantly conclude that the claimant has failed to sustain his burden of proof that he is disabled by an "occupational disease" within the meaning of Section 108(n), 77 P.S. §1208(n). This section provides in pertinent part:

"The term 'occupational disease,' as used in this act, shall mean only the following diseases:

. . .

"(n) All other occupational diseases (1) to which the claimant is exposed by reason of his employment, and (2) which are peculiar to the industry or occupation, and (3) which are not common to the general population."

At the time of the hearing before the referee as well as on appeal to the Board and the court below, this case would appear to be controlled by *Perez v. Blumenthal Bros. Chocolate Co.*, 428 Pa. 225, 237 A. 2d 227 (1968) and *Porter v. Sterling Supply Corp.*, 203 Pa. Superior Ct. 138, 199 A. 2d 525 (1964), which held that pulmonary emphysema is a disease common to the general population and not peculiar to the industries there involved, and thus not within subsection (n) of 108.[2] The

---

[2] The court below distinguished *Porter* as involving only pulmonary emphysema, where as in the instant case claimant suffered from both pulmonary emphysema and fibrosis. Dr. Auerbach's testimony, however, indicates that claimant's fibrosis is secondary to his emphysema, thus distinguishing this case from *Habovick v. Curtiss-Wright Corp.*, 207 Pa. Superior Ct. 80, 215 A. 2d 389 (1965),

underlying rationale of *Porter*—that Section 108(n) is limited to the discovery of new diseases having their beginnings in the conditions of a particular occupation or industry—has since been considerably weakened by the Supreme Court's decision in *Utter v. Asten-Hill Mfg. Co.*, 453 Pa. 401, 309 A. 2d 583 (1973). *Utter* held that a disease common to the general public may nevertheless be an occupational disease within the meaning of Section 108(n) if the disease is shown by competent evidence to be "peculiar to the claimant's occupation by its causes and the characteristics of its manifestations." 453 Pa. at 410, 309 A. 2d at 588. Although *Utter* is limited to the occupational disease there involved, lung cancer associated with asbestos exposure, the above language has been applied to Section 108(n) claims for pulmonary emphysema and fibrosis. *See Dunn v. Merck & Company, Inc.*, 12 Pa. Commonwealth Ct. 573, 317 A. 2d 657 (1974); *Hunter v. Penn Galvanizing Co.*, 13 Pa. Commonwealth Ct. 480, 319 A. 2d 214 (1974).

The record here establishes the first element of Section 108(n): the Board accepted as credible the testimony of Dr. Auerbach that claimant's present disability was caused by his exposure to a flour dust hazard in the course of his employment. As to latter evidentiary criteria, there is competent testimony that pulmonary emphysema and fibrosis induced by the inhalation of flour dust is peculiar in cause to the pulmonary emphysema and fibrosis common to the general population. The instant record, however, contains no evidence from which we can reasonably infer that claimant's emphysema and fibrosis is peculiar in the characteristics of its manifestations from that suffered by the general public. Claimant apparently recognizes, by directing

---

where a claimant's exposure to polyethel ether resulted in pulmonary fibrosis secondary to emphysema.

our attention to *Hendler v. Cayton Bakery*, 263 App. Div. 784, 31 N.Y.S. 2d 299 (1941) (dissent) that pulmonary fibrosis and emphysema induced by the extended inhalation of flour dust is physiologically distinguishable from the more common forms of pulmonary emphysema and fibrosis. *See also Young v. Kern's Bakery, Inc.*, 481 S.W. 2d 65, 68 (Ky. 1972). In the absence of such evidence, we must reluctantly conclude that claimant has failed to establish that he suffers from an occupational disease within the meaning of Section 108(n). *Dunn v. Merck & Company, supra.*

### ORDER

AND Now, July 31, 1974, the order of the court below, dated April 16, 1974, dismissing exceptions and the appeals of Appellants in the above captioned case is reversed.