Commonwealth of Pennsylvania, Bureau of Occupational Injury and Disease Compensation, Appellant, *v.* Lee S. Brown and Strick Trailer Co., Appellees.

Argued October 10, 1974, before Judges CRUMLISH, JR., KRAMER and WILKINSON, JR., sitting as a panel of three.

*Joseph F. Strain,* Counsel, with him *Samuel C. Vary,* Assistant Attorney General, for appellant.

*Jack M. Myers,* with him *Zack, Myers and Atkinson,* for appellee, Lee S. Brown.

*R. D. Harburg,* with him *Swartz, Campbell & Detweiler,* for appellee, Strick Trailer Co.

OPINION BY JUDGE CRUMLISH, JR., December 12, 1974:

The Bureau of Occupational Injury and Disease Compensation (Commonwealth) appeals from an order of the Court of Common Pleas of Philadelphia County which affirmed a decision of the Workmen's Compensation Appeal Board holding the Commonwealth solely liable for disability compensation payable to Lee S. Brown (Claimant) under the Pennsylvania Occupational Disease Act, Act of June 21, 1939, P. L. 566, *as amended,* 77 P.S. §1201 et seq. (ODA).

Claimant was employed as a welder by Strick Trailer Company (Strick)[1] for approximately six years, his last day of work in this position being December 23, 1966. For most of these six years, Claimant's job consisted of welding painted and unpainted dry metal parts. In July or August of 1966, the welding included wet painted parts which gave off a noxious odor and fumes when fired. Although Claimant had headaches, and general nausea previously from the fumes which were incidental to dry welding, these reactions worsened after he started welding wet painted parts. On December 27, 1966, Claimant was hospitalized for pronounced nausea and fluid loss due to what was subse-

---

[1] Strick was a wholly owned subsidiary of Fruehauf Corporation until January 1, 1966, at which time the stock of Strick was sold to Strick Holding Company. In November of 1966 the stock of Strick Holding Company was sold to New York Central Railroad which subsequently became the Penn Central Railroad. Thereafter the stock was sold to Strick, Inc., the present owner. On the basis of this change in corporate ownership, the referee found Claimant to have engaged in four separate employments, thus bringing in the potential liability of the Commonwealth in the successor employer situation of Section 301(g) of the ODA, 77 P.S. §1401(g) (Supp. 1974-1975). The merits of this determination are not now before us.

quently diagnosed as complete renal or kidney failure. Following successful dialysis, Claimant was able to return to Strick on March 13, 1967, and was reassigned to a lesser paying job which did not involve welding.

The instant claim petition was filed on January 28, 1969, alleging an occupational disease—renal failure—under Section 108(n) of the ODA, 77 P.S. §1208(n) (Supp. 1974-1975), which disablement he contended resulted from exposure to paint fumes associated with welding covering a period of five or more years. After a hearing, a referee awarded benefits against the Commonwealth by determining that under Section 301(g) of the ODA, 77 P.S. §1401(g), (1) Claimant had suffered renal failure from acute tubular neurosis which "developed from the inhalation of noxious fumes from welding painted metals" over a period of six years; and (2) that because there were four corporate ownership changes of Strick, this hazardous exposure occurred in the course of four separate employments.

The Commonwealth appealed to the Workmen's Compensation Appeal Board. It was then discovered that the notes of testimony of Claimant's medical witness, upon which the referee apparently relied in making this award, had been inadvertently misplaced. The Board accordingly remanded the record for the appointment of an impartial medical expert to determine the cause and nature of Claimant's disability. Upon remand, a second referee reheard the testimony of Claimant's medical witness. Based upon this testimony, which in essence established that Claimant's disability was the product of a massive exposure to noxious paint fumes immediately prior to his hospitalization, the referee found it unnecessary to appoint an impartial medical expert, and awarded compensation to Claimant. Liability, however, was shifted to Strick exclusively based upon a finding that the exposure was limited to less than five years.

Strick appealed this award to the Board. It vacated the findings and award of the second referee and reinstated those of the first referee. Apparently this action was based upon our decision in *Universal Cyclops Steel Corp. v. Krawczynski,* 9 Pa. Commonwealth Ct. 176, 305 A. 2d 757 (1973), where we held that if the Board does not take additional evidence *in a workmen's compensation appeal,* it is bound by the findings of fact of the referee if they are supported by competent evidence. The Board inferred from the testimony of Claimant's medical expert during the hearing conducted by the second referee that there was competent evidence before the first referee to support his initial finding that Claimant's disability resulted from a hazardous exposure extending beyond five years. The Board accordingly reimposed sole liability for disability compensation on the Commonwealth under Section 301(g), 77 P.S. §1401(g). In appealing to this Court as well as the court below, the Commonwealth's principal argument is that the Board erred in drawing an adverse inference from missing testimony. Although we agree that this procedure was improper, we find that it is not reversible error because the record properly before the Board contains ample evidentiary support of its decision.

In an occupational disease case where the party who has the burden of proof prevailed below, our review is limited to a determination of whether the findings and conclusions of the Board are supported by substantial competent evidence, leaving to the Board questions of credibility and the weight to be given contradictory evidence. Furthermore, we must give the prevailing party the benefit of all favorable inferences which may be reasonably deduced from the evidence. *Utter v. Asten Hill Mfg. Co.,* 453 Pa. 401, 309 A. 2d 583 (1973); *Allegheny Pittsburgh Coal Co. v. Ostroski,* 12 Pa. Commonwealth Ct. 1, 315 A. 2d 895 (1974). The Board in inferring

that the missing testimony (from the first hearing) was competent and sufficient to support the original referee's findings of fact on the issue of exposure duration and thus binding upon it, understandably misconstrued its fact-finding function in an occupational disease case.

As Judge MENCER, in clarification, speaking for this Court in *Dunn v. Merck & Co., Inc.*, 12 Pa. Commonwealth Ct. 572, 575, 317 A. 2d 657, 659 (1974), recently wrote: "Our holding in Universal Cyclops Steel Corporation v. Krawczynski, [supra], did *not* change the Board's role in occupational disease cases. We held only that Section 423 of the Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P. L. 736, 77 P.S. §854, had been changed by recent legislation so that, in workmen's compensation cases, the ultimate fact-finding responsibility was taken from the Board and given to the referee unless the Board chose to hear new evidence. Section 423 of [the ODA], 77 P.S. §1523, the counterpart to Section 423 of the Pennsylvania Workmen's Compensation Act was not affected by these changes. Hence, the Board is still the ultimate fact-finder and may disregard the findings of fact of the referee in all cases brought under [the ODA]." (Emphasis original.) *See also Hunter v. Penn Galvanizing Co.*, 13 Pa. Commonwealth Ct. 480, 319 A. 2d 214 (1974).

This functional error on the part of Board, however, does not affect our role in reviewing the result. The sole issue raised by the Commonwealth in rejecting its liability for compensation under either Section 301(g), 77 P.S. §1401(g), or Section 308(a), 77 P.S. §1408(a) (Supp. 1974-1975), is whether there was competent evidence to support the finding adopted by the Board that Claimant's occupational disease developed to the point of disablement after an exposure of more than five years. We find supportive competent evidence of record in Claimant's testimony that the irritation from the fumes "started from the time I was posted on to the

job I was on, for the 5 years that I was on this posted job where they painted the material." Although Claimant's medical witness testified before the second referee that the acute nature of Claimant's renal failure indicated a massive exposure to paint solvents over a short period of time, the Board, in adopting the first referee's findings, discounted this latter testimony and chose to believe Claimant, and in so doing bound this Court. *Allegheny Pittsburgh Coal Co. v. Ostroski, supra.*

The Commonwealth's final argument is that the claim petition is barred by Section 315 of the ODA, 77 P.S. §1415, because it was not filed within sixteen months of the beginning of Claimant's disability. Section 315 then provided in pertinent part as follows: "In cases of disability all claims for compensation shall be forever barred, unless . . . within sixteen months after compensable disability begins, one of the parties shall have filed a petition as provided in article four hereof . . . *Where, however, payments of compensation have been made in any case, said limitations shall not take effect until the expiration of sixteen months from the time of the making of the most recent payment made prior to the date of filing such petition."* (Emphasis supplied.) 77 P.S. §1415 (Supp. 1974-1975).

The Commonwealth did not raise this defense by way of answer to Claimant's petition. Section 315, however, "is not a mere technical statute of limitation, but is a statute of repose intended to bar the claim, or right to compensation, unless its provisions are complied with, and that it need not be specially pleaded to be enforced." *Reichert v. Pennsylvania Railroad Co.,* 156 Pa. Superior Ct. 213, 221, 40 A. 2d 158, 161 (1944). Although Commonwealth has not waived this defense, we, nevertheless, find that Claimant's petition was timely under Section 315 as emphasized above. The record here reveals that Claimant received $102.85 in compensation under a non-occupational health plan maintained by Strick

for the period of February 22, 1968 to March 4, 1968 during which time Claimant missed work for reasons attributable to his disability. Each referee's award deducted this compensation from the amount due Claimant. Since these payments compensated for a loss of earning power and not for services rendered, they tolled the running of the statute. *See City of Scranton v. Workmen's Compensation Appeal Board*, 10 Pa. Commonwealth Ct. 424, 310 A. 2d 701 (1973). The instant petition was filed within sixteen months of the last payment and was timely.

Order affirmed.