Walter Lash, Petitioner *v.* Workmen's Compensation Appeal Board and General Battery Corporation, Respondents.

Richard Jablonski, Petitioner *v.* Workmen's Compensation Appeal Board and General Battery Corporation, Respondents.

Argued March 11, 1977, before Judges WILKINSON, JR., MENCER and BLATT, sitting as a panel of three.

*Marc S. Jacobs,* with him *Galfand, Berger, Senesky, Lurie & March,* for petitioners.

*Paul R. Ober,* with him *Edelman, Saylor, Readinger & Poore,* and *James N. Diefenderfer,* for respondents.

OPINION BY JUDGE MENCER, May 11, 1977:

Walter Lash and Richard Jablonski (claimants) are seeking benefits under Section 108(a) of The Pennsylvania Workmen's Compensation Act[1] (Act). Each contends that as a result of his employment with General Battery Corporation (General Battery) he has become partially disabled by the occupational disease of lead poisoning. Neither the referee who held hearings on their claim petitions nor the Workmen's Compensation Appeal Board (Board) accepted claimants' contentions, and both denied benefits. Claimants then appealed to this Court.

In cases such as these, where the parties with the burden of proof have not prevailed below, this Court's scope of review is to determine whether the findings of fact are consistent with each other, with the con-

---

[1] Act of June 2, 1915, P.L. 736, *as amended,* added by the Act of October 17, 1972, P.L. 930, §1, 77 P.S. §27.1(a).

clusions of law, and with the order and can be sustained without a capricious disregard of competent evidence. *Workmen's Compensation Appeal Board v. Morton*, 22 Pa. Commonwealth Ct. 577, 349 A.2d 773 (1976). Because no errors are present here, we will affirm the Board.

At the hearings before the referee, each claimant testified that he had held a position that brought him in direct contact with lead. While holding these positions, the claimants were periodically tested by General Battery to determine whether lead was present in their blood. In 1975, the claimants were removed from these positions, apparently because they had absorbed a certain amount of lead. However, they were not discharged by General Battery. Rather, they were allowed to take positions which involved no contact with lead. Because these positions were less remunerative than their former lead-exposed positions, the claimants sought occupational disease benefits.

On cross-examination, the claimants testified that they enjoy good health and that they could have continued in their higher paying positions. Moreover, each claimant admitted that he had not sought medical attention for any symptoms relating to lead poisoning. It is therefore not surprising that the only "medical" evidence offered on behalf of the claimants was the blood-lead charts kept by General Battery and letters written by a physician apparently retained by General Battery, which recommended that, as a *preventative* measure, each claimant be kept out of lead-exposed areas.

In each case, the referee found that neither an occupational disease nor a disability had been proved. Considering the record before him, the referee could hardly have found otherwise. The loss of income suffered by the claimants here is at best but one factor to be taken into account by the referee in determining

the existence of a partial disability. *See Modern Cooler Co. v. Workmen's Compensation Appeal Board,* 18 Pa. Commonwealth Ct. 22, 333 A.2d 811 (1975). Certainly, it is not controlling. Nor are the blood-lead charts significantly probative on any issue in lieu of some interpretive expert testimony. We consider claimants' proof to be wholly inadequate, and we therefore affirm the Board's denial of benefits.

### ORDER

AND Now, this 11th day of May, 1977, the orders of the Workmen's Compensation Appeal Board dated July 29, 1976, concerning the appeals of Walter Lash and Richard Jablonski, are hereby affirmed.