Frank Schmeck, Jr., Appellant *v.* General Battery Corporation and Commonwealth of Pennsylvania, Appellees.

Sherridan E. Loeb, Appellant *v.* General Battery Corporation and Commonwealth of Pennsylvania, Appellees.

Walter Paul, Appellant *v.* General Battery Corporation and Commonwealth of Pennsylvania, Appellees.

Howard W. Garber, Appellant *v.* General Battery Corporation and Commonwealth of Pennsylvania, Appellees.

Kenneth Haas, Appellant *v.* General Battery Corporation and Commonwealth of Pennsylvania, Appellees.

Argued October 4, 1979, before Judges CRUMLISH, JR., DISALLE and MACPHAIL, sitting as a panel of three.

*Joseph Lurie,* of counsel, *Galfand, Berger, Senesky, Lurie & March,* for petitioners.

*Richard A. Bausher*, with him *Stevens & Lee*, for General Battery Corporation, respondent.

*Sandra. S. Christianson*, Assistant Attorney General, for respondent.

OPINION BY JUDGE MACPHAIL, January 23, 1980:

This is an appeal from an opinion and order of the Court of Common Pleas of Berks County affirming the Workmen's Compensation Appeal Board (Board), thereby denying benefits to Frank Schmeck, Jr., Sheridan E. Loeb, Walter R. Paul, Howard Garber and Kenneth A. Haas (Claimants).

All of the individual Claimants were employees of General Battery Corporation (Employer), a manufacturer of lead-lined batteries. Claimants had worked in areas of lead exposure for periods varying from 4½ to 21 years. The Employer provided routine physical examinations of employees in lead areas and when employees were found to have a high lead content in their blood after two exposures, they were transferred to non-lead jobs.

Between 1971 and 1972, each of the Claimants in the instant appeal were transferred to non-lead jobs pursuant to Employer's "prevention plan." However, in all but one case, the non-lead employment was at a lower rate of pay.[1]

After being transferred, each Claimant applied for benefits alleging permanent partial disability due to lead poisoning.[2] After hearings, the referee awarded benefits for partial disability, in all cases.

---

[1] Sheridan E. Loeb testified and the referee found that he had not suffered a loss of earnings.

[2] Section 108(a) of The Pennsylvania Occupational Disease Act (Act), Act of June 21, 1939, P.L. 566, *as amended*, 77 P.S. §1208(a) provides that,

Appeals were then taken to the Board, and upon review of the evidence, the Board reversed in each case. Thereupon Claimants appealed to the Court of Common Pleas of Berks County. In an opinion and order dated May 17, 1978, Judge ESHELMAN affirmed the Board's decision and denied benefits. This appeal followed.

Our scope of review in this case, "in the absence of an error of law or violation of constitutional rights, is to determine whether the findings of fact of the Board are supported by substantial evidence, leaving questions of credibility, evidentiary weight and the resolution of conflicts in the testimony to the Board." *Cuppett v. Sheesley Supply Co.*, 30 Pa. Commonwealth Ct. 584, 588, 374 A.2d 757, 758 (1977).

Initially Claimants argue that they have sustained an injury which is compensable under The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §1 et seq. We agree with Judge ESHELMAN's opinion on this issue that "we deal in the instant case with the *Occupational Disease Act* where 'disability' rather than 'injury' is the event fixing liability." 70 Berks 288 (1978) (emphasis added). Therefore, we must conclude that any further discussion of the issue of compensation for *injury* under the Pennsylvania Workmen's Compensation Act would be pointless.

Claimants' second argument is that disability is synonymous with loss of earning power and that since Claimants suffered a loss of earning power (with one exception previously noted), they have suffered a disability as that term is defined in the Act. It is true

---

The term 'occupational disease,' as used in this act, shall mean only the following diseases:

(a) Poisoning by . . . lead . . . in any occupation involving direct contact with, handling thereof, or exposure thereto.

that our Court has held that disability is synonymous with loss of earning power. *Borough of Catawissa v. Shultz,* 9 Pa. Commonwealth Ct. 546, 308 A.2d 633 (1973). However, Judge BLATT's opinion in *Gallo v. Workmen's Compensation Appeal Board,* 31 Pa. Commonwealth Ct. 599, 377 A.2d 1014 (1977) is instructive. In *Gallo* our Court, when presented with a similar factual situation, held that "the loss of income suffered by a claimant is only one factor in determining the existence of a compensable disability." *Gallo, supra* at 603, 377 A.2d 1016. In other words, loss of income or loss of earning power are not synonymous with disability *unless* claimant also suffers from an occupational disease as that term is defined in the Act. *Lash v. Workmen's Compensation Appeal Board,* 30 Pa. Commonwealth Ct. 124, 372 A.2d 1265 (1977) (allocatur granted No. 373, January Term, 1978). Accordingly, we conclude that loss of income or loss of earning power without proof that the claimant also suffers from an occupational disease is not a disability.

Definitely, the most difficult question presented by this appeal is whether the Board correctly determined that the Claimants are not entitled to compensation because they have failed to prove disability caused by an occupational disease.

In a matter governed by the Occupational Disease Act, the *Board* is the ultimate fact finder and may disregard findings of fact of the referee. *Commonwealth v. Brown,* 16 Pa. Commonwealth Ct. 148, 329 A.2d 541 (1974). The question of whether Claimants suffer from the affliction of lead poisoning is a factual determination solely within the province of the Board.

We were presented with an identical question in *Lash v. Workmen's Compensation Appeal Board, supra.* In *Lash* this Court affirmed the referee and the Board, where both found that General Battery employees who had been transferred to lower paying jobs

as a result of high lead counts in their blood had failed to prove an occupational disease or a disability.

The occupational disease which Claimants claim they suffer from, i.e., lead poisoning, is clearly one of the enumerated diseases found in Section 108(a) of the Act, 77 P.S. §1208(a). In order to show disability, however, Claimants bear the burden of proving that they suffer from that disease. While we are not qualified to undertake to define in medical terms what constitutes lead poisoning, we are compelled to agree with the testimony of Claimants' own medical witness (which is the only medical evidence before us in the instant cases) that more than high blood lead counts are necessary to establish the existence of the disease.[3] In the instant cases, the Board pointed out the necessity of distinguishing between one who suffers from lead poisoning and one who is an absorber of lead. As the Board noted, the Act provides compensation only for those who suffer from disability caused by one of the enumerated diseases; it does not provide benefits for those susceptible to contracting the disease. In each of the cases now before us, the medical witness stated that the Claimant does *not* suffer from lead poisoning although each of them is prone to absorb lead. Under such circumstances, the Board not only could but was obligated to reverse the referee.

---

[3] *See Rohner v. Fox Products*, 164 Pa. Superior Ct. 610, 67 A.2d 605 (1949). In *Rohner* the court found that the claimant was afflicted with lead poisoning because he suffered from

> a decided loss of appetite; his complexion became sallow and jaundiced; his lips became pale, his finger nails showed black marks; there was a dark or lead line at the base of the teeth; there were tumors of the hands and lack of coordination of the lower extremities; he frequently suffered severe abdominal pains; he suffered from nausea; he had a metallic taste in his mouth; he was fatigued, nervous, and unable to sleep.

*Rohner, supra* at 612-613, 67 A.2d at 607.

Accordingly, we affirm.

Judge DiSalle concurs in result only.

ORDER

AND Now, this 23rd day of January, 1980 the order of the Court of Common Pleas of Berks County dated May 17, 1978 is hereby affirmed.

This decision was reached prior to the expiration of the term of office of Judge DiSalle.