Philip Loiacono, Appellant v. Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Bethlehem Corporation, Appellees.

Philip Loiacono v. Bethlehem Corporation and Commonwealth of Pennsylvania. Commonwealth of Pennsylvania, Appellant.

Argued April 7, 1980, before Judges BLATT, CRAIG and WILLIAMS, JR., sitting as a panel of three.

*Sandra S. Christianson,* Assistant Attorney General, with her *Laurence W. Dague,* Assistant Attorney General, for appellant.

*George K. Keenan,* with him *Lawrence J. Briody, Briody and Keenan,* and *John P. Thomas,* for appellees.

OPINION BY JUDGE CRAIG, June 20, 1980:

These cross appeals are before us from the July 26, 1978 order of the Court of Common Pleas of Northampton County, which affirmed the order of the Workmen's Compensation Appeal Board (board) awarding occupational disease compensation to claimant Philip Loiacono, but reversed that order insofar as it apportioned 100% of payment liability to the Commonwealth pursuant to Section 301(g) of The Pennsylvania Occupational Disease Act, Act of June 21, 1939, P.L. 566, *as amended,* 77 P.S. §1401(g); by the lower court's decision, payment liability was apportioned 40% to the Commonwealth and 60% to the employer considered by the court to be the "employer liable" under the Act.

Claimant worked for Treadwell Engineering Company from 1920 until April, 1969, and from May through August of that year for Bethlehem Corporation, which succeeded Treadwell as claimant's employer upon purchasing Treadwell's assets. Throughout the entire forty-nine year period, claimant's employment was in foundry work which subjected him to a silica hazard, and there is no dispute that claimant suffers total disability due to silicosis.

Claimant's appeal contends only that the court below erred in reversing the board's allocation of 100% of payment liability to the Commonwealth. The Commonwealth's appeal alleges that claimant is precluded from compensation by virtue of his failure to give notice to Treadwell, which the Commonwealth argues is the "employer liable" within the terms of the Act; additionally, the Commonwealth contends that it may not be held 100% liable under Section 301(g) unless claimant's employment history reveals more than one employment situation in which the claimant was exposed to the occupational hazard for a minimum of six months, i.e., multiple legal exposures—"exposure" being here given a special statutory characteristic of existing for six months or more.

Ordinarily, pursuant to Section 308(a) of the Act, 77 P.S. §1408(a), when disability results from occupational diseases which develop to the point of disablement only after an exposure of five or more years, payment liability is shared by the Commonwealth (40%) and the employer (60%). The purpose of that apportionment was articulated in *Walker v. Chestnut Hill Hospital*, 214 Pa. Superior Ct. 258, 252 A.2d 383 (1969), as follows:

> Some diseases, and particularly those first included in the act, such as silicosis, are insidious diseases that progress slowly to total disability; while others, like some forms of tuberculosis

may incubate from one incident of exposure and quickly reach disability. The purpose of the section we are interpreting was to set exposure periods so that hazardous industries would have full knowledge that claims based on long time exposure would be subsidized by the Commonwealth. This served two ends, one, it persuaded the hazardous industries and particularly self-insurers to accept the act; and two, it encouraged insurance carriers to cover the risk.

214 Pa. Superior Ct. at 261-2, 252 A.2d at 385-6.

However, that apportionment scheme is expressly subject to the operation of Section 301(g), which provides that:

(g) [t]he employer liable for the compensation provided by this article shall be the employer in whose employment the employe was last exposed to the hazard of the occupational disease claimed, regardless of the length of time of such last exposure: Provided, That when a claimant alleges that disability or death was due to silicosis, anthraco-silicosis, coal worker's pneumoconiosis, asbestosis or any other occupational disease which developed to the point of disablement only after an exposure of five or more years, the only employer liable shall be the last employer in whose employment the employe was last exposed to the hazard of such occupational disease during a period of six months or more: And provided further, That in those cases where disability or death is not conclusively proven to be the result of such last exposure, all compensation shall be paid by the Commonwealth. An exposure during a period of less than six months after the effective date of this act shall not be deemed an exposure. The notice of disability or death and claim shall be

made to the employer who is liable under this subsection, his insurance carrier, if any, and the Commonwealth.

As can be seen, this section in no way addresses a claimant's entitlement to compensation; it "deals only with the liability of employers and is silent as to any rights to which [a] claimant may be entitled. . . . This section applies only to employers and designates the one that shall be liable under certain circumstances." *Silva v. Erie Forge Co.*, 149 Pa. Superior Ct. 251, 254-55, 27 A.2d 727, 728 (1942). Thus the terms of the statute which delineate those "certain circumstances" serve to identify, as between successive employers, the particular employer who may be liable to share payment responsibility with the Commonwealth. Accordingly, the portions of the section describing "the only employer liable" do not establish the liability of any particular employer, but, rather, operate only to insulate earlier employers, and in the specified situations, "to protect the last employer in whose employment the employee had not been exposed for six months or more." *Silva, supra,* 149 Pa. Superior Ct. at 255, 27 A.2d at 728.

The pivotal question in this case is raised by the language of the section which makes subsidization by the Commonwealth total when it provides, "[t]hat in those cases where disability or death is not conclusively proven to be the result of such last exposure, all compensation shall be paid by the Commonwealth."

The Commonwealth contends that the latter proviso becomes operative only when a claimant has experienced multiple statutorily-defined "exposures", *i.e.,* more than one employment situation wherein the claimant was exposed for six months or more. We disagree.

Nothing in the statute makes multiple "exposures" a necessary condition precedent to imposition of 100%

liability on the Commonwealth. The fact which initiates the operation of the provisos of Section 301(g) is that which satisfies the condition of "when a claimant alleges that disability or death was due to silicosis, anthraco-silicosis, coal worker's pneumoconiosis, asbestosis, or any other occupational disease which developed to the point of disablement *only after an exposure of five or more years.*" (Emphasis ours.)

If that condition is satisfied, the next inquiry is: In what employment was the claimant last exposed to the hazard for six months or more? In view of our preceding analysis, resolution of that question still does not apportion liability to any employer. Identifying the last "exposing" employer merely insulates all *other* employers from the possibility of payment liability.

Having identified the last "exposing" employer, the final and determinative question may be phrased thus: Has the disability or death been conclusively proven to be the result of such last six-month exposure? If the answer to that question is "No", then all compensation shall be paid by the Commonwealth. If the answer is "Yes", then liability is shared by the Commonwealth and *that employer,* pursuant to Section 308(a).

The burden of demonstrating that the disability or death is conclusively a result of the last cognizable exposure is on the Commonwealth, *Paglioroli v. Shenango Penn Mold Co.,* 189 Pa. Superior Ct. 496, 151 A.2d 637 (1959), and that burden is a heavy one, *Baughman v. Meadville Malleable Iron,* 39 Pa. Commonwealth Ct. 4, 9-10, 394 A.2d 1058, 1060 (1978). Accordingly, when a claim comes within Section 301(g), the Commonwealth can avoid 100% liability only by carrying its burden and thus shifting a portion of that liability to the last "exposing" (six-month) employer.

In a case where the claimant has had only one employer throughout, the identification of the "employer liable" is never in question; there, the Commonwealth faces no burden with respect to the possibility of bearing 100% of the liability.

However, Section 301(g) confronts the Commonwealth with a special burden of causal proof in a multiple employment situation, whether each of the several employments constitutes an "exposure" or not. The present case illustrates the point: Even though claimant's final employment (with Bethlehem) did not amount to an exposure legally cognizable for determination of the employer liable, nevertheless, during and as a result of that four-month employment period in contact with the hazard, his silicosis could have culminated in disability *as a matter of fact*. Even a brief final hazardous employment period "no matter how slight" can be *"in part* the cause of claimant's disability"*, Workmen's Compensation Appeal Board and Klebick v. Commonwealth,* 19 Pa. Commonwealth Ct. 499, 338 A.2d 758 (1975) (involving a mere seventeen-day period.)

Thus, this record being devoid of any evidence to eliminate the factual possibility of the final (Bethlehem) employment as ultimate cause, the Commonwealth has not met its Section 301(g) burden of *conclusively* proving disability to be the result of the last legally-cognizable six-month exposure (with Treadwell).

This case, then, is clearly one "where disability . . . is not conclusively proven to be the result of such last exposure"; hence, "all compensation shall be paid by the Commonwealth", under the plain words of Section 301(g).

Accordingly, we must conclude that the board's decision as to the liability of the Commonwealth should be upheld.

The Commonwealth's argument as to the alleged deficiency of the notice given by claimant is not persuasive. The Commonwealth does not allege that it was without notice, but only that the "employer liable" was not given notice.

Under Section 301(g), as above analyzed, no employer is liable until the Commonwealth carries its burden to place liability upon an employer who meets the six-month requirement of the section.

In view of the liberal construction to be afforded the provisions of the Act, *Roschak v. Vulcan Iron Works,* 157 Pa. Superior Ct. 227, 42 A.2d 280 (1945), we cannot allow the Commonwealth to avoid its heavy burden by relying on the absence of notification to a particular corporate entity, which the Commonwealth itself has failed to seek out, whose presence is relevant and necessary only to the Commonwealth's defense.[1] We are strengthened in this conclusion by considering that, under Section 301(g), where the Commonwealth may be 100% liable, it is entitled to direct notice, while under normal circumstances, where the Commonwealth is only proportionately liable, there is no direction that the Commonwealth be given separate notice. Section 311 of the Act, *as amended,* 77 P.S. 1411.

Accordingly, we will affirm the order of the court below except insofar as it apportions liability between

---

[1] Although it may be that Treadwell is no longer in existence, there is no evidence of record indicating that it is or is not an extant concern. At argument, respective counsel for claimant, the Commonwealth, and Bethlehem Corporation each indicated that they had no knowledge as to the current status of Treadwell, be it ongoing or defunct. Although the point is not necessary to our decision, it may seem unreasonable to expect claimant to identify the legal status or existence of a business entity for notice purposes when the answer is unknown even to legal counsel for the "successor" corporation.

Claimant's notice to employer consisted of notice to his supervisor, who served as such for Bethlehem as well as (previously) for Treadwell.

the Commonwealth and the "employer liable," in which regard we will reinstate the board's order which placed 100% liability on the Commonwealth.

ORDER

AND Now, this 20th day of June, 1980, the July 26, 1978 order of the Court of Common Pleas of Northampton County at No. 200 January Term 1978, is affirmed except insofar as it relieves the Commonwealth of any portion of liability for compensation due to claimant Philip Loiacono, and, in that regard, the February 2, 1978 order of the Workmen's Compensation Appeal Board at No. A-73152 is reinstated. Accordingly, it is hereby ordered that judgment be entered in favor of claimant Philip Loiacono and against the defendant Commonwealth of Pennsylvania, in the amount of Sixty ($60.00) Dollars per week commencing July 28, 1972 and continuing thereafter subject to the limitation that total payments at that rate shall not exceed Twelve Thousand Seven Hundred Fifty ($12,750) Dollars.

Upon full payment of the above award, defendant is directed to pay to claimant the further amount of One Hundred ($100.00) Dollars per month, pursuant to Sections 301(a) and (j) of the Pennsylvania Occupational Disease Act, Act of June 21, 1939, P.L. 566, *as amended*, 77 P.S. §§1401(a) and (j), for such time as claimant's total disability continues.