## Porter *v.* Sterling Supply Corp. et al., Appellants.

Argued March 16, 1964. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Roger B. Wood,* with him *Joseph R. Thompson,* for appellants.

*Don F. D'Agui,* for appellee.

OPINION BY ERVIN, J., April 14, 1964:

On July 24, 1961, Claim Petition No. 165,565 was filed with the Workmen's Compensation Board by the deceased claimant, William B. Porter, alleging that he

was disabled by pulmonary emphysema, an occupational disease compensable under §108(n) of The Pennsylvania Occupational Disease Act. After the claim petition had been duly answered and after one hearing had been held before Referee Alessandroni, the claimant, William B. Porter, died on November 20, 1961. Subsequently, Fatal Claim Petition No. 167,155 was filed with the Workmen's Compensation Board by Elmira B. Porter, the widow of William B. Porter, alleging that her husband had died as the result of an occupational disease incurred in a hazardous employment. After further hearings, the referee made awards in both claims. The employer and its insurance carrier and the Commonwealth of Pennsylvania appealed from the referee's awards to the Workmen's Compensation Board. The board affirmed the findings of fact and conclusions of law of the referee and dismissed the appeals. The employer and its insurance carrier then appealed to the court below. The court below affirmed the decision of the Workmen's Compensation Board, holding that the factual findings of the board could not be disturbed and that the pulmonary emphysema of the decedent was an occupational disease within the meaning of §108(n) of The Pennsylvania Occupational Disease Act, 77 PS §1208(n). The employer and its insurance carrier have appealed from the judgments of the court below.

The claimant, approximately 65 years of age at the time of the hearing, had been employed for approximately 20 years by the defendant company, which was engaged in the manufacture of laundry supplies. He testified that his duties involved changing cars of chlorine, changing cylinders of ammonia, and changing valves whenever necessary. On two separate occasions he had been hospitalized after being rendered unconscious by a concentration of chlorine fumes when exposed to same after a valve had split. He further tes-

tified that frequently while changing a valve he would get a puff of gas which made him cough for hours.

In May 1960 the plant relocated to a new site and his duties then included working with the following chemicals: perchlorethylene, ammonia, amyl acetate, acetic acid fifty-six per cent, acetone, hydrogen peroxide one hundred volume, oxalic acid, carbon tetrachloride. The company's chemist also testified that claimant was exposed to these fumes in addition to chlorine, caustic and perchlorethylene. The chemist also testified that chlorine gas is a respiratory irritant which irritates the mucous membranes of the mouth, nose and lungs. He further testified that two or three times a year claimant would become overchlorinated and on those occasions he could hardly breathe, would get blue in the face, and would cough for hours.

The court below concluded that the case fell squarely within the provisions of §108(n), which was incorporated in the act by the amendment of February 28, 1956 and which provides as follows: "The term 'occupational disease', as used in this act, shall mean only the following diseases: . . . . (n) All other occupational diseases (1) to which the claimant is exposed by reason of his employment, and (2) which are peculiar to the industry or occupation, and (3) which are not common to the general population. For the purposes of this clause, partial loss of hearing due to noise shall not be considered an occupational disease."

While we have great sympathy for the claimant's widow, we cannot agree with the conclusion reached by the court below. It is, of course, true that The Pennsylvania Occupational Disease Act should be considered liberally, in accordance with its humanitarian purpose. We are not, however, permitted to distort the meaning of clear and plain statutory language: *Bingaman v. Baldwin Locomotive Works*, 159 Pa. Superior Ct. 29, 46 A. 2d 512, 514; *Shrum v. Atlantic Crushed*

*Coke Co.,* 186 Pa. Superior Ct. 377, 142 A. 2d 792, 795.

In *DeMascola v. Lancaster,* 200 Pa. Superior Ct. 365, 189 A. 2d 333, Judge WATKINS, for this Court, made an excellent review of the various provisions of The Pennsylvania Occupational Disease Act as originally written and amended, and he stated that §108(n), 77 PS §1208(n), "is a catch-all occupational disease amendment" but he was careful to further state "It is apparent that the provisions of §1401(c) [§301(c) of the Act] as necessary proof in occupational disease cases are included in this amendment."

In *Chuplis v. Steve Shalamanda Coal Co.,* 192 Pa. Superior Ct. 76, 159 A. 2d 520, 521, Judge WOODSIDE, speaking for this Court, said: "A claimant under this act must establish both an occupational disease which 'is peculiar to the occupation or industry in which the employe was engaged,'[1] and 'compensable disability or death resulting from occupational disease and occurring within four years after the date of his last employment in such occupation or industry.' See §301, as amended, 77 PS §1401(c)."

In its opinion the court below took note of the fact that §301(c) was already in The Pennsylvania Occupational Disease Act prior to the enactment of §108(n) and that its provisions are virtually identical with those of §108(n). The language of §301(c) is as follows: "Compensation for the occupational diseases enumerated in this act shall be paid only when such occupational disease is peculiar to the occupation or industry in which the employe was engaged, and not common to the general population." June 21, 1939, P. L. 566, No. 284, §301, 77 PS §1401(c).

Since §108(n) added no barriers to recovery that were not already previously in §301(c), the court be-

---

[1] See also *Mackey v. Swift & Co.,* 12 Pa. D. & C. 2d 191; *McCaw v. Algase,* 1 Pa. D. & C. 2d 588; *Wright v. Juris Apparel, Inc.,* 62 Dauphin 110.

low felt that this lent support to its conclusion regarding the meaning of §108(n). We, however, can see no reason why the language of §108(n) should not be considered the same as it has been in connection with §301(c). The evidence in this record clearly reveals that pulmonary emphysema is not a disease which is peculiar to the industry or occupation here involved. On the other hand, the evidence in this record does reveal that pulmonary emphysema is a disease which is common to the general population.

We are of the belief that the legislature intended to broaden the coverage of The Pennsylvania Occupational Disease Act by the addition of §108(n). It is equally clear, however, that it did not intend to extend coverage to all diseases for the subsection contains three express limitations which otherwise would not have been included. It could easily have provided that all diseases were compensable as long as they were caused by some hazard or exposure encountered during the course of the employment. It did not, however, so provide because it imposed the aforementioned limitations. It might very well be that this would be a desirable result but it can only be accomplished by the legislature and not by any action of this Court. Since the question involved in this appeal is one of law and not of fact, it is unnecessary to remand the record for further action of the board: *Anderson v. Baxter*, 285 Pa. 443, 132 A. 358; *Callihan v. Montgomery*, 272 Pa. 56, 115 A. 889; *Giallonardo v. St. Joseph's College*, 177 Pa. Superior Ct. 87, 111 A. 2d 178.

Judgments reversed.