345 A.2d 601

**Harold Richard DUNN, Appellant,**

v.

**MERCK & COMPANY, INC., et al.,
Appellees.**

Supreme Court of Pennsylvania.

Argued May 8, 1975.

Decided Oct. 3, 1975.

442

---

George J. Nagle, Shamokin, for appellant.

William R. Mosolino, Orwigsburg, for appellee, Commonwealth of Pa. Occupational Disease Fund.

Louis G. Feldmann, Feldmann & Ciotola, Peter J. Fagan, Hazelton, for appellee, Merck & Co., Inc. & Pa. Mfrs. Assn. Ins. Co.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY and NIX, JJ.

## OPINION OF THE COURT

EAGEN, Justice.

On July 21, 1967, Harold Richard Dunn filed a claim petition under The Pennsylvania Occupational Disease Act.[1] Dunn had been employed by Merck & Company, Inc. [Merck] as a chemical operator from January 21, 1952, until August 23, 1966. In his employment, Dunn handled approximately forty-seven different chemicals in various concentrations and combinations in the preparation of medicines. In his petition, Dunn alleged that, as a result of exposure to and inhalation of these chemicals, he had become totally disabled by pulmonary fibrosis and emphysema and, therefore, qualified for compensation under Act.[2] This subsection provides, in pertinent part, that the term occupational disease shall include "other occupational diseases (1) to which the claimant is exposed by reason of his employment, and (2) which are peculiar to the industry or occupation, and (3) which are not common to the provisions of Section 108(n) of the general population." [3]

After three hearings, the Workmen's Compensation Referee on January 28, 1970, entered an award in favor of Dunn. The Referee determined that Dunn, by reason of his exposure to toxic fumes, dusts and solvents while in Merck's employ, had become totally and permanently disabled on August 23, 1966, due to pulmonary fibrosis with superimposed pulmonary emphysema. Merck then appealed to the Workmen's Compensation Board which, without taking further testimony, on May 18,

1. Act of June 21, 1939, P.L. 566, as amended, 77 P.S. § 1201 et seq.

2. Act of June 21, 1939, P.L. 566, as amended, 77 P.S. § 1208(n).

3. See and compare the provisions of Section 108(n) of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, as amended, 77 P.S. § 27.1(n), which may be applicable to employees exposed to the hazard of occupational disease after June 30, 1973.

1972, reversed the award by the Referee and dismissed Dunn's claim. The Board, relying upon *Habovick v. Curtiss-Wright Corporation*, 207 Pa.Super. 80, 215 A.2d 389 (1965), held that relief could be had in accordance with the provisions of Section 108(n) where pulmonary emphysema is found to be secondary to pulmonary fibrosis. However, after a close analysis of the testimony taken before the Referee, the Board determined that Dunn had failed to prove the existence of pulmonary fibrosis.[4] Because the Board assumed that pulmonary emphysema, by itself, would not constitute an occupational disease within the meaning of Section 108(n),[5] it failed to discuss whether Dunn had proved the existence of pulmonary emphysema; nor did it discuss whether Dunn's pulmonary emphysema was caused by his employment with Merck. Dunn then filed an appeal in the Court of Common Pleas of Northumberland County and his appeal was dismissed.

4. We have independently reviewed the record and have determined the Board's conclusion that Dunn failed to prove the existence of pulmonary fibrosis is supported by competent evidence. In addition, we note that under Section 423 of The Pennsylvania Occupational Disease Act, 77 P.S. § 1523, the Board remains the ultimate factfinder and may disregard the findings of fact of the Referee in all cases. This provision stands in contradistinction to Section 423 of The Pennsylvania Workmen's Compensation Act, 77 P.S. § 854 (amendment effective May 1, 1972) which provides that, in workmen's compensation cases, the ultimate fact-finding responsibility rests with the Referee *unless* the Board chooses to hear new evidence. See *Universal Cyclops Steel Corporation v. Krawczynski*, 9 Pa.Cmwlth. 176, 305 A.2d 757 (1973). While Dunn contends that equal protection requires the Board to have the same role under both acts, this issue was not raised in the courts below, although both proceedings were conducted subsequent to May 1, 1972. Therefore, this issue has not properly been preserved for appellate review. See *Wiegand v. Wiegand*, 461 Pa. 482, 337 A.2d 256 (1975); *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974).

5. For this assumption the Board relied upon *Porter v. Sterling Supply Corp.*, 203 Pa.Super. 138, 199 A.2d 525 (1964), where the Superior Court held that pulmonary emphysema was a disease common to the general public and, therefore, not an occupational disease within Section 108(n).

An appeal was then taken to the Commonwealth Court. That court recognized the Board had acted without the benefit of our decision in *Utter v. Asten-Hill Mfg. Co.*, 453 Pa. 401, 309 A.2d 583 (1973) (filed September 19, 1973), which set forth the law as to when a disease may properly be considered an occupational disease under the provisions of Section 108(n). Prior to *Utter*, case law had decreed that diseases which were common to the general population could not be considered as compensable occupational diseases under the provisions of Section 108(n), even if the disease were caused by the claimant's employment. See e. g., *Perez v. Blumenthal Brothers Chocolate Company*, 428 Pa. 225, 237 A.2d 227 (1968); *Scott v. United States Steel Corporation*, 203 Pa.Super. 459, 201 A.2d 243 (1964); *Porter v. Sterling Supply Corp.*, 203 Pa.Super. 138, 199 A.2d 525 (1964). However, in *Utter*, this Court recognized that Section 108(n) was intended to be a "vehicle for compensation in situations . . . where the . . . diseases, though not enumerated elsewhere in the act, are nonetheless generated by an occupational hazard." *Id.* at 410, 309 A.2d at 588. We there ruled that cancer, although common to the general public, can be an occupational disease as that term is defined by Section 108(n), "if it may be shown by competent evidence that a claimant's cancer is peculiar to the claimant's occupation by its *causes and the characteristics of its manifestation.*" [Emphasis added.] *Id.* at 410, 309 A.2d at 588.

The Commonwealth Court properly perceived that, although the *Utter* case involved the disease of cancer, the language used was not intended to be limited in application. Therefore, it ruled that pulmonary emphysema would be an occupational disease within Section 108(n) if the claimant could demonstrate the disease is peculiar to his occupation by its "causes and the charac-

teristics of its manifestation".[6] However, after independently reviewing the record, the Commonwealth Court found that Dunn had failed to satisfy the test set forth in *Utter*. We cannot agree with this disposition of the issue.

 It is well-settled that the compensation authority is the factfinding body and it is not within the province of a reviewing court to assume the privilege of making findings of fact. *Cerny v. Schrader & Seyfried, Inc.*, 463 Pa. 20, 342 A.2d 384 (1975) ; *Utter v. Asten-Hill Mfg. Co.*, supra; *Dindino v. Weekly Review Publishing Company, Inc.*, 188 Pa.Super. 606, 149 A.2d 475 (1959). As noted previously, the Board was under the misconception that pulmonary emphysema could not be an occupational disease under Section 108(n). Therefore, the Board deemed it unnecessary to decide whether Dunn had proved the existence of pulmonary emphysema. Nor, by natural consequence, did the Board consider whether Dunn's pulmonary emphysema was demonstrated by him to be peculiar to his occupation by its "causes and the characteristics of its manifestation". The Commonwealth Court's determinations in this regard, based upon a tabula rosa, were patently improper.

 Therefore, we vacate the Order of the Commonwealth Court and remand the record to the Workmen's Compensation Board so that it may decide whether Dunn had proved the existence of pulmonary emphysema and whether such pulmonary emphysema was caused by his employment with Merck. In the event the Board determines that Dunn had sufficiently demonstrated the existence of pulmonary emphysema and that his employment was the cause thereof, we then direct the Board to

---

6. Of course, if a particular disease is proven not to be common to the general public and is peculiar to the claimant's industry or occupation, relief may be had under the provisions of Section 108(n) without the necessity of resorting to the test enunciated in *Utter*.

conduct a new hearing at which Dunn may endeavor to prove his pulmonary emphysema is peculiar to his occupation by its "causes and the characteristics of its manifestation".[7]

It is so ordered.

JONES, C. J., and MANDERINO, J., took no part in the consideration or decision of this case.

POMEROY, J., concurs in the result.

7. In *Brubaker v. Reading Eagle Company*, 422 Pa. 63, 221 A.2d 190 (1966), this Court recognized that justice may require that courts permit litigants an opportunity to mold their positions to meet changes in decisional law. *Brubaker* was a defamation case brought by a public official against a newspaper. The jury awarded the public official a substantial verdict. While the defendant's motions for judgment non obstante veredicto or a new trial were pending, the United States Supreme Court entered its decision in *New York Times Company v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), which set new standards for actionable defamation by public officials against newspapers. On the authority of that decision, the court en banc entered an order granting judgment n.o.v.

This Court reversed the lower court's order and directed that a new trial be held, stating:

". . . considering the knowledge of the law that the attorneys and the trial court had at the time of trial, it is impossible to find either that the relevant factual matters were attempted to be proved or that crucial issues were charged upon. Neither can we find as a matter of law that appellant satisfied the requisites of his cause of action under Sullivan or that, were a new trial to be granted, he could not do so."

*Id.* at 65, 221 A.2d at 191.

Instantly, since the *Utter* decision was handed down subsequent to the presentation of Dunn's evidence, similar considerations are present.