Greer *v.* United States Steel Corp., Appellant.

Argued April 14, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Blair S. McMillin*, with him *Thomas R. Wright, James D. Strader*, and *Reed, Smith, Shaw & McClay*, for appellant.

*William R. Caroselli*, with him *McArdle, Henderson, Caroselli & Beachler*, for appellee.

OPINION BY WATKINS, P. J., December 22, 1975:

This is an appeal from the order of the Court of Common Pleas of Allegheny County refusing appellant's motion for judgment on the pleadings.

The history of the appeal is as follows: On December 29, 1973, the plaintiff Allison Greer, filed a complaint in trespass against the employer-defendant, United States Steel Corporation, seeking damages as a result of the negligence of the defendant. The plaintiff alleged he contracted pulmonary fibrosis as a result of his exposure to the noxious emissions incident to his employment at the defendant's Clairton works.

The defendant's answer raised the defense of exclusivity of the Occupational Disease Act and that the complaint failed to state a cause of action. The defendant filed a Motion for Judgment on the Pleadings and in the alternative requested a Certification for Allowance of Appeal to this Court as well as a Stay of the Proceedings. The lower court denied its motions and the defendant-appellant petitioned for reconsideration of its Request for Certification to this Court and a Stay of Proceedings. The lower court granted the Certification for Allowance of Appeal to this Court but did not grant the Stay of Proceedings. This Court granted the appellant's petition for Allowance of Appeal and Stay of Proceedings.

With the enactment of the first Workmen's Compensation Act by the legislature in 1915, Act No. 338, June 2, 1915, P.L. 736, 77 P.S. §1 et seq., and its companion, the Occupational Disease Act, Act of June 21, 1939, P.L. 566, No. 284, 77 P.S. §1201, et seq., and the amendments made periodically thereto, it has been the clear legislative intent to provide an accessible, expert and easy forum for the handling of all claims for occupational injury and disease; to provide for prompt payment of all costs for all medical expenses and reasonable income loss payments to the employee or his dependents; to reduce the costs and delays of personal injury court trials and eliminate unnecessary payment of fee to lawyers, witnesses as well as time consuming trials and appeals; and to accomplish this without assessing fault to the employee or employer while the employer is freed from the threat of court suit.

The only question involved in this appeal is where a claimant alleges he contracted a disease in the course of his employment which arose out of his employment and is related thereto, is he free to elect to file his action in trespass in Common Pleas Court and in a jury trial have the question of the compensability of the disease determined or must he first file under the provisions of the Workmen's Compensation Act, supra.

The claimant here has made the factual and legal determination that his claim is not compensable by filing his action in the nature of trespass, while the legislature has created a forum with expertise in these matters to make this determination. The legislature has in fact removed from the jurisdiction of the Courts of Common Pleas all matters relating to Workmen's Compensation and directed that appeals from the Workmen's Compensation Board be taken to the Commonwealth Court so that an expert and consistent line of decisions would evolve. §427 of the Act, supra.

It is agreed that both parties to this litigation have accepted Workmen's Compensation Act. Section 303 of the Act, supra, sets forth the effect of such acceptance: "Such agreement shall constitute an acceptance of all the provisions of article three of this act, and shall operate as a surrender by the parties thereto of their rights to any form or amount of compensation or damages for any disability or death resulting from occupational disease, or to any method of determination thereof, other than as provided in article three of this act. Such agreement shall bind the employer and his personal representatives, and the employe, his or her wife or husband, widow or widower, next of kin, and other dependents."

Any question as to the intention of the legislature that the remedy created by the Workmen's Compensation Act be exclusive is removed by the Act of December 5, 1974, P.L. 263, effective February 3, 1975, which states:

"(a) The Liability of an Employer under this Act shall be exclusive and in place of any and all other Liability to such Employes, his Legal Representatives, Husband or Wife, Parents, Dependents, next of kin or anyone otherwise entitled to Damages in any action at law or otherwise on account of any injury or death as defined in Section 301 (L) (1) and (2) or Occupational Disease as defined in Section 108."

Pulmonary fibrosis, the disease forming the basis of appellee's claim is within the purview of §108 (n) of the

Occupational Disease Act, supra, which includes: "(n) All other occupational diseases (1) to which the claimant is exposed by reason of his employment, and (2) which are peculiar to the industry or occupation, and (3) which are not common to the general population. For the purposes of this clause, partial loss of hearing due to noise shall not be considered an occupational disease. Added 1956, Feb. 28, P.L. (1955) 1095 §1."

Whether the proofs ultimately establish compensability is for the compensation referee, board and Court to determine. To live up to the spirit of the Act, every attempt to establish compensability should be made, not an attempt to avoid the provisions of the Workmen's Compensation Act.

Appellee relies strongly upon the case of *Perez v. Blumenthal Bros. Chocolate Co.*, 428 Pa. 225, 237 A. 2d 227 (1968), as precedent for his right to select the Court of Common Pleas as the initial forum. However, in that case the basis for the action was determined not to be an occupational disease by a prior proceeding under the Workmen's Compensation Act. By voluntarily accepting the Workmen's Compensation Act, both parties have bound themselves to proceed under the Act as the initial forum for all work-related injuries or diseases.

The briefs of both appellant and appellee attempt to predetermine the compensability of appellee's claim. We must, however, remember that the decision in each compensation case depends primarily on its individual facts, *Sayre v. Textile Machine Works*, 129 Pa. Superior Ct. 520, 195 A. 786 (1937), bearing in mind that the provisions of the Act are remedial in nature and are to be liberally construed, with borderline interpretations resolved in favor of the employee. *United States Steel Corp. v. Workmen's Compensation Appeal Board*, 10 Pa. Comm. Ct. 247, 309 A.2d 842 (1973). *Hinkle v. H. J. Heinz Co.*, 462 Pa. 111, 337 A.2d 907 (1975). What the ultimate outcome of this claim might be is impossible to determine

in view of the more liberal interpretation of the Act by the courts and the board and liberal amendments to the Act by the legislature.

The order of the court below is reversed and judgment entered in favor of the appellant on the pleadings.

---

DISSENTING OPINION BY SPAETH, J.:

In my view, there are two reasons why the motion for judgment on the pleadings should not be granted: (1) there is an unresolved question of fact; and (2) although arguably the Occupational Disease Act, Act of June 21, 1939, P.L. 566, 77 P.S. §1201 *et seq.*, requires that this issue of fact be resolved before a workmen's compensation referee instead of a common pleas judge, the Supreme Court has decided otherwise in *Perez v. Blumenthal Bros. Chocolate Co.*, 428 Pa. 225, 237 A.2d 227 (1968).

I

Pulmonary fibrosis is not one of the diseases specifically enumerated in Sections 108(a) through (m) of the Occupational Disease Act, 77 P.S. §1208 (a) through (m); however, Section 108(n) establishes three criteria by which other diseases not specifically enumerated may be brought within the Act:[1]

---

1. *But compare* the provisions of Section 108(n) of the Workmen's Compensation Act. Act of June 2, 1915, as amended, Dec. 6, 1972, P.L. 1627, No. 337, Sec. 1, 77 P.S. §27.1:

"(n) All other diseases (1) to which the claimant is exposed by reason of his employment, and (2) which are causally related to the industry or occupation, and (3) the incidence of which is substantially greater in that industry or occupation than in the general population. . . ."

These more inclusive criteria apply to exposure to hazards after June 30, 1973. They do not apply to appellee, who has been an employee at United States Steel's Clairton plant for twenty years.

It should also be noted that the definition of compensable injury under the Workmen's Compensation Act was recently broadened to include occupational diseases:

"All other occupational diseases (1) to which the claimant is exposed by reason of his employment and (2) which are peculiar to the industry or occupation and (3) which are not common to the general population . . ."

The unresolved issue of fact here is whether or not appellee's pulmonary fibrosis is "peculiar to the industry or occupation."

Formerly, Section 108 (n) was strictly construed to exclude from its coverage diseases that occur throughout the general population, such as lung cancer, pulmonary emphysema, and pulmonary fibrosis. *See Scott v. United States Steel Corporation,* 203 Pa. Superior Ct. 459, 201 A.2d 243 (1964); *Porter v. Sterling Supply Corporation,* 203 Pa. Superior Ct. 138, 199 A.2d 525 (1964).[2] More recently, the Supreme Court has held that a disease suffered by the general population may be classified as an occupational disease if it can be established through

---

"(2)   The terms 'injury,' 'personal injury,' and 'injury arising in the course of his employment,' as used in this act, shall include, unless the context clearly requires otherwise, occupational disease as defined in Section 108 of this act. . . . "
77 P.S. §411, Dec. 5, 1974, P.L. 782, No. 263, Section 4.

77 P.S. §413, added October 17, 1972, P.L. 930, No. 223, Section 3, further liberalizes the Workmen's Compensation Act with regard to occupational disease by establishing a presumption of coverage:

"If it be shown that the employe at or immediately before the date of disability, was employed in any occupation or industry in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment but this presumption shall not be conclusive."

2.   *But see Habovick v. Curtiss-Wright Corporation,* 207 Pa. Superior Ct. 80, 215 A.2d 389 (1965). There this court found that an employee's pulmonary fibrosis was within the coverage of Section 108(n) because the particular hazard, exposure to chemicals causing the condition in question, was "peculiar to the industry or occupation." The employee had been found free of fibrosis in a physical examination conducted just prior to his commencing work.

competent medical evidence that the form in which the disease has occurred is peculiar to the claimant's industry or occupation. In *Utter v. Asten-Hill Manufacturing Company,* 453 Pa. 401, 309 A.2d 583 (1973), the Court rejected the rationale of the *Scott* and *Porter* decisions and accepted the claimant's medical testimony that his lung cancer was of a type specifically associated with exposure to asbestos: "The Superior Court concluded in *Scott* that recovery under Section 108(n) could not be sustained because cancer is neither peculiar to the steel industry nor uncommon in the general public. The underpinnings of the *Scott* decision . . . [are] that the legislature intended Section 108(n) to apply only to the discovery of new diseases having their genesis in the claimants' occupations. This interpretation severely limits the usefulness of Section 108(n) as a vehicle for compensation in situations like this one where the decedent's fatal diseases, though not enumerated elsewhere in the act, are nonetheless generated by an occupational hazard. A more reasoned analysis of Section 108(n), and one which we adopt in this setting, is that cancer can be an occupational disease, though it exists in the general public, if it may be shown by competent evidence that a claimant's cancer is peculiar to the claimant's occupation by the causes and the characteristics of its manifestation." *Id.* at 410, 309 A.2d at 588.

In *Dunn v. Merck and Company, Inc.,* 463 Pa. 441, 446, 345 A.2d 601, 604 (1975), the Supreme Court recognized that the rationale of *Utter* was not limited to the disease of cancer discussed in that case, but that "any disease, although common to the general public, would be an occupational disease within Section 108(n) if the claimant could demonstrate the disease to be peculiar to his occupation by its 'causes and the characteristics of its manifestation.'" *Williams v. Spaulding Bakeries, Inc.,* 464 Pa. . . . ., 346 A.2d 3, 5 (1975). In both *Williams* and *Dunn* the Commonwealth Court had correctly enunciated the *Utter*

rule as the test to be applied, but had independently reviewed the record to find that neither claimant had satisfied that test. *Dunn v. Merck and Company, Inc.,* 12 Pa. Commonwealth Ct. 572, 317 A.2d 657 (1974); *Spaulding Bakeries, Inc. v. Williams,* 14 Pa. Commonwealth Ct. 526, 323 A.2d 416 (1974). In both cases the Supreme Court remanded the record to the Workmen's Compensation Board to permit the Board to decide the factual question of whether or not the claimants' diseases were peculiar to the occupations in question by the "characteristics of their manifestation[s]." "It is well settled that the compensation authority is the fact-finding body and it is not within the province of a reviewing court to assume the privilege of making findings of fact." *Dunn v. Merck and Company, Inc., supra,* 463 Pa. at 447, 345 A.2d at 604.

## II

As I understand the majority opinion in the case before us, it does not deny that whether appellee's pulmonary fibrosis is "peculiar to the industry or occupation," *i.e.,* here, the steel industry, is an issue of fact; rather, it holds that this issue cannot be resolved in a court of common pleas, but must be resolved initially, and only, before a workmen's compensation referee.

I grant that the legislature *could* say that whenever it is asserted, either by a claimant or his employer, that a disease is an occupational disease (or that it is not, as appellee has argued here), the assertion must be resolved by the workmen's compensation authorities.[3] The ques-

---

3. Article III, Section 18 of the Pennsylvania Constitution provides in relevant part:

"The General Assembly may enact laws requiring the payment by employers . . . of reasonable compensation for injuries to employes arising in the course of their employment, and for occupational diseases of employes . . . and *fixing the basis of ascertainment of such compensation* and the maximum and minimum limits thereof, and providing special or general

tion is whether the legislature *has* said this. The critical provision is Section 303 of the Occupational Disease Act, 77 P.S. §1403, which states that by accepting the provisions of the Act, the parties

> ". . . surrender . . . their rights to any form or amount of compensation or damages for any disability or death resulting from occupational disease, or to any method of determination thereof, other than that provided in article three of this act."[4]

Thus, the right to bring a common law action is surrendered *if* there is an occupational disease, but who is to decide whether there is?

Appellant argues, and the majority opinion agrees, that the clause "any method of determination thereof" means that the decision whether a given disease is occupational is to be made by a workmen's compensation referee. I grant that this is a plausible argument, but

---

remedies for the collection thereof; but in no other cases shall the General Assembly limit the amount to be recovered for . . . injuries to person or property. . . ." (Emphasis added.)

4. Act of 1939, June 21, P.L. 566, No. 284, Section 303.

This section was similar to the parallel provision of the Workmen's Compensation Act, Section 303, 77 P.S. §481. Prior to the 1974 revisions to the Workmen's Compensation Act, 77 P.S. §481 provided:

> "Such agreement shall constitute an acceptance of all the provisions of article three of this act, and shall operate as a surrender by the parties thereto of their rights to any form or amount of compensation or damages for any injury or death occurring in the course of the employment, or to any method of determination thereof, other than as provided, in article three of this act. Such agreement shall bind the employer and his personal representatives, and the employe, his or her wife or husband, widow or widower, next of kin, and other dependents." 1915, June 2, P.L. 736, Art. III, §303; 1937, June 4, P.L. 1552, §1; 1939, June 21, P.L. 520, §1.

In December, 1974, the section making the remedies under the Workmen's Compensation Act exclusive was completely re-

I do not find it persuasive. I think that "thereof" refers not to "occupational disease" but to "compensation"; or, to put it differently, *assuming* an occupational disease, *then* the "determination" of the "amount of compensation" must be made exclusively by the workmen's compensation authorities. This distinction is particularly important in cases that bring into question the applicability of Section 108(n), since each claimant under that section must establish by "competent evidence" that his disease is "peculiar to the claimant's occupation," *Utter v. Asten-Hill Manufacturing Company, supra.* I suggest that in the absence of a more explicit statutory directive, the courts must remain open to a claimant who chooses to have the question of whether his disease is "peculiar to the industry or occupation" determined by a judge rather than a referee.

I do not question the proposition, well established in the courts of our state, that an employee may not sue

----

written and now includes occupational diseases within its coverage. The rewritten section does not apply to the instant case, since appellee's original complaint was filed December 29, 1973, and the lower court's orders from which this appeal has been taken were issued June 7, 1974, and July 2, 1974. However, the wording of the revision leaves no doubt that the legislature intended the remedies under the Act to be exclusive when the Act in fact applies to a given injury or occupational disease:

> "The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes . . . or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in Section 301(c) (1) and (2) *or occupational disease as defined in Section 108.*" (Emphasis added.) 77 P.S. §481, as amended 1974, Dec. 5, P.L. 782, No. 263, Section 6.

As I read this provision, it says that the Act provides the exclusive remedy once there is an occupational disease as defined in Section 108; it does not say that the workmen's compensation authorities must first make the determination whether the disease is occupational.

his employer at common law if an injury or disease is compensable under the Workmen's Compensation Act or the Occupational Disease Act. *See, inter alia, Hamler v. Waldron,* 445 Pa. 262, 284 A.2d 725 (1971); *Scott v. C. E. Powell Coal Company,* 402 Pa. 73, 166 A.2d 31 (1960); *Nicklos v. Firestone Tire and Rubber Company,* 346 F. Supp. 185 (E.D. Pa. 1972). Nor have our courts permitted an employee to sue in trespass for a compensable "injury arising in the course of his employment," 77 P.S. §411, even when the compensation authorities have found the particular claim to lack merit: "We have ruled that when an employee sustains injuries which bring him within the provisions of the Workmen's Compensation Act, the question as to what amount he is compensated depends upon the provisions of the Act, and if that measure yields him nothing, the assumption is that he is nevertheless satisfied with his agreement."

*Scott v. C. E. Powell Coal Co., supra* at 77-78, 166 A.2d at 34. *See also Hartwell v. Allied Chemical Corporation,* 457 F.2d 1335 (3d Cir. 1972) *aff'g* 320 F. Supp. 75 (W. D. Pa. 1970). However, the courts have been equally explicit in stating that Section 303 of the Workmen's Compensation Act, 77 P.S. §481, does not bar a trespass action if the injury in question is not covered by the Act. In *Dolan v. Linton's Lunch,* 397 Pa. 114, 152 A.2d 887 (1959), the plaintiff was attacked by a fellow employee while at work. The defendant argued that the trial court did not have jurisdiction over the claim, because the plaintiff was limited in his statutory remedies under the Workmen's Compensation laws. The Supreme Court said that "injury by an accident," Section 301(c), 77 P.S. §411, excluded assaults for personal motives. Since the plaintiff was thus barred from proceeding under the Act, the Court held that under the State Constitution he could not be denied his common law remedies:

"To read the Act so as to deny plaintiff his existing common law remedy without permitting him to come

within the protective coverage of the Workmen's Compensation Act might well violate the mandate of Article I, Section 11 of the Constitution of Pennsylvania which provides: 'All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay . . . .' This provision was not modified by Article III, Section 21 [now Section 18] of the Constitution which enables the General Assembly to enact laws requiring reasonable compensation be paid to employees for injuries arising in the course of their employment . . . *Nowhere in this latter provision is the General Assembly authorized to enact a law which vitiates an existing common law remedy without concurrently providing for some statutory remedy. Of course, the substituted remedy need not be the same, but that is far different from saying that no remedy at all may be substituted.*" 397 Pa. at 123-124, 152 A.2d at 892. (Emphasis added)

*See also Repyneck v. Tarantino,* 403 Pa. 300, 303, 169 A.2d 527, 528 (1961) ("The Pennsylvania Workmen's Compensation Act does not deprive the courts of jurisdiction over common law causes of action . . .") ; *Burke v. Duquesne Light Company,* 231 Pa. Superior Ct. 412, 332 A.2d 544 (1974).

I suggest that without an explicit directive from the legislature, we ought not to adopt appellant's and the majority's interpretation and deprive an injured party of the fundamental right to resort to the courts. Our case law supports the view that "[t]he legislature intended that the Workmen's Compensation Act would supersede common law actions only as to cases within its coverage," *Dolan v. Linton's Lunch, supra* at 124-125, 152 A.2d at 893. It does not require that the initial determination of whether a claimant under Section

108(n) comes within the coverage of workmen's compensation or occupational disease legislation be made by a referee. Confronted by a statutory scheme that appeared to preempt judicial review of administrative actions, the United States Supreme Court has stated as a matter of statutory construction that to preclude review, a statute must "upon its face give clear and convincing evidence of an attempt to withhold it." *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 156 (1970). *See also Abbott Laboratories v. Gardner,* 387 U.S. 136, 140-141 (1967). I do not find such clear and convincing evidence in the statute before us.

Appellant has argued that nevertheless, we should deprive an injured person of his right to resort to the courts because of the "sophisticated familiarity" of workmen's compensation referees "with making factual medical determinations," and also because of "the problems of court congestion," (Appellant's brief at 16, 17). I remain unpersuaded. A court is at least equal, and I suggest superior, to a referee in deciding a medical issue and in interpreting statutes. The problem presented by Section 108(n) is not such a problem of administrative law as may be encountered in formulating rules for interstate carriers, or in fixing future rates for stockyards, or in considering applications for a broadcast license. *See, e.g.,* the recent discussion by Chief Judge FRIENDLY in his article, *Some Kind of Hearing,* 123 U. Pa. L. Rev. 1267, 1305-15 (1975). Rather, it is just the sort of problem that a court is good at deciding. As for court congestion: in most counties in Pennsylvania, there is no backlog; it is principally in the large metropolitan counties, in particular, Philadelphia and Allegheny, that there are backlogs. However, query whether the court backlogs, even in those counties, is worse than the backlog in compensation cases. (Appellant concedes "that some 'leading' cases in the workmen's compensation field are

resolved in tortoise-like fashion." Appellant's brief at 17.) Moreover, many industries, probably most, are located in other counties, where there is no backlog, or very little.

Finally, however one may appraise my observations, I suggest that the issue has already been decided by our Supreme Court in *Perez v. Blumenthal Bros. Chocolate Company, supra.* The plaintiff there first filed a claim under the Occupational Disease Act. When the defendant denied that the plaintiff's emphysema was an occupational disease, the plaintiff withdrew his claim and filed a complaint in trespass. (The majority opinion states that it had been "determined not to be an occupational disease by a prior proceeding under the Workmen's Compensation Act;" however, this statement is, I suggest, not accurate.) The defendant then objected to the complaint in trespass, saying that, after all, the plaintiff's emphysema was an occupational disease. The lower court dismissed the objection, tried the case, and found for the plaintiff. The Supreme Court affirmed.

The Court opened its discussion by remarking that it was "tempted" to dismiss the defendant's contentions simply because of the defendant's strategy of claiming that the plaintiff's condition was or was not an occupational disease depending on the forum. *Id.* at 227, 237 A.2d at 228. The same point may be made here: if we remit appellee to the compensation authorities, who is to say that appellant may not there claim that appellee's pulmonary fibrosis is after all not an occupational disease, and that therefore appellee should be back in common pleas? While it may be necessary for a plaintiff in cases covered by Section 108(n), 77 P.S. §1208(n), to resort to a second forum, depending on whether the evidence shows his disease to be "peculiar to the industry or occupation," the defendant cannot be permitted to deny him any hearing at all by changing its answer in each forum. The Supreme Court then went on to say: "Be

that as it may, however, the *Act itself makes clear that it is not a bar to the trespass action." Id.* (Emphasis added).

I cannot escape this statement. Nor could the Court of Appeals for the Third Circuit in *Hartwell v. Allied Chemical Corporation, supra*: "The disease from which the plaintiff in *Perez* suffered was not listed, nor did it fall within the clause just quoted. Since *it therefore was not an 'occupational disease' within the meaning of the Act, the Supreme Court held that the exclusivity clause of the Occupational Diseases Act could not constitute a bar to the common law action."* (Emphasis added) 457 F.2d at 1337.

I concede that neither the Supreme Court in *Perez* nor the Court of Appeals in *Hartwell* expressly ruled upon the argument that appellant raises here: they did not, that is, expressly interpret the effect to be given the clause "any method of determination thereof," in Section 303, 77 P.S. §1403. I also concede that perhaps on *allocatur*, appellant will be able to persuade the Supreme Court to retreat from its holding in *Perez*. However, even if I were persuaded that the Court should retreat—and, as I have said, I am not—until it does, we must follow it.

I would therefore affirm the order of the lower court, denying appellant's motion for judgment on the pleadings.