385 A.2d 576

**Anthony J. GABEL, Executor of the Estate of Edward Gabel, Deceased, Appellant,**

v.

**ROHM & HAAS COMPANY, Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 14, 1976.

Decided April 13, 1978.

Herbert Somerson, Philadelphia, for appellant.

Joseph H. Foster, Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PER CURIAM:

This is an appeal from the order of the Court of Common Pleas of Philadelphia County which sustained appellee's preliminary objections and dismissed appellant's complaint.

Edward Gabel died on January 22, 1971, at the age of 56 of respiratory cancer. He had been employed by the appel-

lee, Rohm & Haas Company, from January 1956 until October 2, 1970.

The appellant, Anthony J. Gabel, Executor of the Estate of Edward Gabel deceased, filed a claim petition for Workmen's Compensation on June 2, 1975. An answer was filed thereto. When called before a referee for hearing the appellant had the hearing continued.

On December 3, 1975, the appellant filed his complaint in trespass alleging decedent died of respiratory cancer due to exposure to chemical fumes at work for appellee.

The appellee filed preliminary objections to the complaint alleging lack of jurisdiction in the Court of Common Pleas because the cause of action was under the Occupational Disease Act No. 284, June 21, 1939, P.L. 566, as amended 77 P.S. 1201 et seq. Unlike *Greer v. United States Steel*, 237 Pa.Super. 597, 352 A.2d 450 (1975), in the instant case depositions were produced which established the disease to be occupational and within the purview of § 108 of the Act, supra, because of its cause and the characteristics of its manifestation.

That this matter falls within the primary jurisdiction of the Bureau of Workmen's Compensation is apparent. As was stated in the case of *Weston v. Reading Company*, 445 Pa. 182, 282 A.2d 714 (1971):

> "The principles of the doctrine of primary jurisdiction are well settled. The United States Supreme Court ' . . . recognized early in the development of administrative agencies that coordination between traditional judicial machinery and these agencies was necessary if consistent and coherent policy were to emerge . . . The doctrine of primary jurisdiction has become one of the key judicial switches through which this current had passed.' *Port of Boston Marine Terminal Ass'n. v. Rederiaktiebolaget Trans-Atlantic*, 400 U.S. 62, 68, 91 S.Ct. 203, 208 [27 L.Ed.2d 203] (1970) (footnote and citations omitted). The doctrine ' . . . requires judicial abstention in cases where protection of the integrity of a regulatory scheme dictates preliminary resort to the agency

which administers the scheme.' *United States v. Philadelphia National Bank*, 374 U.S. 321, 353, 83 S.Ct. 1715, 1736 [10 L.Ed.2d 915] (1963). Such abstention is necessary to promote ' . . . proper relationships between the courts and administrative agencies charged with particular regulatory duties . . . ' *United States v. Western Pacific Railroad Co.*, 352 U.S. 59, 63, 77 S.Ct. 161, 165 [1 L.Ed.2d 126] (1956). Accord, *Whitney National Bank in Jefferson Parish v. Bank of New Orleans*, 379 U.S. 411, 85 S.Ct. 551 [13 L.Ed.2d 386] (1965); *Far East Conference v. United States*, 342 U.S. 570, 72 S.Ct. 492 [96 L.Ed. 576] (1952); cf. *Bessemer and Lake Erie Railroad Company v. Pennsylvania Public Utility Commission*, 430 Pa. 339, 243 A.2d 358 (1968). See generally 3 Davis, Administrative Law §§ 19.01–.07; Jaffe, Primary Jurisdiction, 77 Harv.L. Rev. 1037 (1964); Latta, Primary Jurisdiction in Regulated Industries and the Antitrust Laws, 30 U. of Cin.L.Rev. 261 (1961); Schwartz, Legal Restriction of Competition in the Regulated Industries; An Abdication of Judicial Responsibility, 67 Harv.L.Rev. 436 (1954).

"The doctrine is clearly applicable to the present litigation."

In *Greer v. United States Steel*, supra, this Court said, 237 Pa.Super. at 600, 352 A.2d at 451:

"It is agreed that both parties to this litigation have accepted Workmen's Compensation Act, Section 303 of the Act, supra, sets forth the effect of such acceptance:

" 'Such agreement shall constitute an acceptance of all the provisions of article three of this act, and shall operate as a surrender by the parties thereto of their rights to any form or amount of compensation or damages for any disability or death resulting from occupational disease, or to any method of determination thereof, other than as provided in article three of this act. Such agreement shall bind the employer and his personal representative and the employe, his or her wife or husband, widow or widower, next of kin, and other dependents.' "

The Supreme Court granted allocatur in the *Greer* case, supra, and in *Greer v. United States Steel*, 475 Pa. 448, 380 A.2d 1221 (1977), the Supreme Court remanded the case to the court below recommending that the Common Law trespass action be stayed pending determination by the Workmen's Compensation authorities as to whether the alleged disease comes within the purview of the act. The Counsel for plaintiff, in his brief, admits he has an action under the Occupational Disease Act but argues that he may obtain more money by his action at Common Law. This flies directly into the face of the purpose for which consential compensation was enacted.

Order affirmed.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

SPAETH, J., concurs in the result.