## Megay v. Union Carbide Corporation

*Joseph A. Whip Jr.,* for plaintiff.
*Stephen Wales Armstrong,* for defendant Union Carbide Corp.
*Mark David Turetsky,* for defendant Automation Industries.

YOHN, *J.,* February 11, 1987—On June 30, 1982, Raymond E. Megay, plaintiff, filed a complaint in this court sounding in trespass and assumpsit against defendant, Union Carbide Corporation. The complaint sought to recover for personal injuries which plaintiff alleges he received while cleaning and handling sources consisting of radio-

active materials, specifically iridium-192 and cobalt-60, which were shipped by Union Carbide to his employer, Automation Industries Inc. Automation is a licensed manufacturer of sealed sources containing such radioactive materials. Plaintiff, as a part of his job as a radiation technician at Automation's plant, came into contact with Union Carbide's product.

Union Carbide filed an answer and new matter to the amended complaint denying all liability to plaintiff. Under new matter Union Carbide alleged that certain actions by plaintiff's employer, Automation, were the actual and supervening cause of plaintiff's injury.

Pursuant to a court-approved stipulation, two and one-half years later, Union Carbide filed a complaint against Automation as additional defendant seeking indemnity and/or contribution.

Automation filed an answer to Union Carbide's complaint and under new matter raised as a defense their joinder by Union Carbide stating that it was barred by section 303(b) of the Workmen's Compensation Act, 77 P.S. §481.[1] Both plaintiff and defendant filed replies to Automation's new matter

---

1. 77 P.S. §481(b) states:

"In the event injury or death to an employee is caused by a third party, then such employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to receive damages by reason thereof, may bring their action at law against such third party, but the employer, his insurance carrier, their servants and agents, employees, representatives acting on their behalf or at their request shall not be liable to a third party for damages, contribution, or indemnity in any action at law, or otherwise, unless liability for such damages, contributions or indemnity shall be expressly provided for in a written contract entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action."

and, the pleadings then being closed, Automation filed a motion for judgment on the pleadings,[2] seeking a judgment that all claims by Union Carbide against it be dismissed with prejudice.

Following oral argument on the motion before the undersigned, this court, by order dated September 30, 1986, granted Automation's motion for judgment on the pleadings thereby entering judgment against Union Carbide. From this order Union Carbide appeals.

## DISCUSSION

Pennsylvania Rule of Civil Procedure 1034 authorizes a court to enter a judgment on the pleadings prior to trial. A motion for judgment on the pleadings may be filed only after the pleadings are closed. In making its decision the court may look only at the pleadings and must accept as true all well pleaded facts of the party against whom the motion is sought as well as all reasonable inferences that can be drawn thereon. *Bata v. Central-Penn Nat. Bank,* 423 Pa. 373, 378, 224 A.2d 174, 178-79, cert. den. 386 U.S. 1007, 18 L.Ed. 2d 433, 87 S.Ct. 1348 (1966); *Necho Coal Co. v. Denise Coal Co.,* 387 Pa. 567, 128 A.2d 771 (1957); *Cary v. School Dist.,* 362 Pa. 310, 66 A.2d 762 (1949). A motion for judgment on the pleadings may be granted only in cases which are clear and free from doubt. *Pennsylvania Gas and Water Co. v. Kassab,* 14 Pa. Commw. 564, 322 A.2d 775 (1975). A motion for judgment on the pleadings has been held proper where, as in this case, the pleadings show that the action is barred by the Workmen's Compensation Law. See *Greer v. United Steel Corporation,* 237 Pa. Super. 597, 352

---

2. Pa.R.C.P. 1034.

A.2d 450 (1975); *Derck v. Paul,* 47 North Co. Rep. 23 (1975); *Cramer v. L. M. Klunk and Sons Inc.,* 86 York Leg. Rec. 189 (1973).

Union Carbide's appeal is based on the argument that its complaint states a claim for relief under the "intentional tort" exception to the Workmen's Compensation exclusivity provisions.[3] In its complaint it alleges the following, which for the purposes of a motion for judgment on the pleadings, we accept as true by admission: (1) As early as the summer of 1980, Automation knew through its agents, servants, workmen and/or employees that plaintiff and other employees were being injured by the radioactive materials as a result of the method they were using to clean the sealed sources; (2) Despite this knowledge, Automation, up until February 1981, intentionally and deliberately encouraged and required plaintiff and others to continue to clean the sealed sources in this manner; (3) Automation intentionally and deliberately caused further harm to plaintiff by actively concealing his injuries from the Nuclear Regulatory Commission out of a fear of a plant shut-down.

The exclusivity of the remedy provided for in the Workmen's Compensation Act is set forth specifically in the act where it states:

"(a) The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employees, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) [77 P.S. §§411(1), (2)] or occupational disease as defined in section 108 [77 P.S. §411(1)], the 'terms

---

3. 77 P.S. §§411, 481.

'injury' and 'personal injury' . . . shall be construed to mean an injury to an employee . . . arising in the course of his employment and related thereto, . . .' Within the same section, the act further expressly provides: As defined by the act, 77 P.S. §411(1), the 'terms 'injury' and 'personal injury' . . . shall be construed to mean an injury to an employee . . . arising in the course of his employment and related thereto, . . .' Within the same section, the act further expressly provides: The term 'injury arising in the course of his employment' as used in this article, shall not include an injury caused by an act of a third person intended to injure the employee because of reasons personal to him, and not directed against him as an employee or because of his employment; but shall include all other injuries sustained while the employee is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere. . . ."

Pennsylvania has for some time recognized a narrow exception to the act's exclusivity based on intentional tort. In reality there are two exceptions involved. One is an exception for intentional torts by the employer. The other is for injuries caused by the act of a third person intended to injure the employee because of reasons personal to him and not directed against him as an employee or because of his employment. This exception is statutory. 77 P.S. §411(1). There are no allegations in Union Carbide's complaint against Automation that the actions of Automation arose out of a personal matter directed against plaintiff. As such, no cause of action exists under the statutory exception for injuries caused by third parties because of personal reasons. 77 P.S. §411(1).

The exception for intentional torts by the employer is not explicitly set out in the statute but is based on judicial construction of Pennsylvania's Workmen's Compensation Act as it existed prior to the 1972 amendments. *Readinger v. Gottshall,* 201 Pa. Super. 134, 191 A.2d 694 (1963). In *Readinger,* the plaintiff was assaulted by her employer when she returned to her place of employment in an attempt to collect wages which were due her. The court in *Readinger,* relying on the language of the statute, held that the employer's assault was not an "accident" and thus was actionable at common law outside the Workmen's Compensation statute. As such, the basis for this exception under the previous language of the act was that intentional torts by employers were not accidents, and therefore, the Workmen's Compensation Act was inapplicable. *Readinger,* supra.

Since *Readinger,* the Pennsylvania Legislature has amended the Workmen's Compensation Act eliminating the "accident" requirement and providing compensation for all injuries suffered "in the course of employment." See Act of March 29, 1972, P.L. 159, §6, as amended, 77 P.S. §411(1). Thus, the 1972 amendments removed the prerequisite of an accident for compensation eligibility. It now is only necessary to show an injury "arising in the course of employment" for recovery. *Hinkle v. H. J. Heinz Company,* 462 Pa. 111, 116 n.4, 337 A.2d 907, 910 n.4 (1975).

The real question raised by the 1972 amendments was whether or not the intentional-tort exception to the Workmen's Compensation exclusivity provision has survived the statutory change. The Pennsylvania Supreme Court has not yet ruled on this question and this state's lower courts have been

anything but uniform on the point.[4] Two decisions from this jurisdiction have held that the intentional-tort exception to the Workmen's Compensation Act is no longer viable. *Denardo v. Certainteed, No. 83-17731 (Montg. C.C.P. September 25, 1985); Hogey v. Morello Excavating Company Inc.,* 113 Montg. Cty. L.R. 225 (1984).

In *Denardo,* Judge Vogel voiced disagreement with the result in *Getz v. Rohm and Haas Company,* No. 576 (2563A), (Philadelphia, October 24, 1984), which held that the intentional-tort exception survived the 1972 amendments for "deliberate egregious conduct by an employer which cannot be characterized as arising naturally in the course of employment." Judge Vogel stated that *Readinger,* supra, was explicitly based on the language "accident" and that absent that word in the statute the exception has no continued validity.

Union Carbide in its answer to automation's motion for judgment on the pleadings cites *Jones v. PMA Insurance Company,* 343 Pa. Super. 411, 495 A.2d 203 (1985), as standing for an acknowledgment by the Superior Court of the continued validity of the holding in *Readinger,* supra. However, in a subsequent opinion, *Higgins v. Cleaning Machine Corporation,* 344 Pa. Super. 325, 331 n.5, 496 A.2d 818, 821 n.5 (1985), the court held that the issue was still unsettled. One thing is clear, the premise

---

4. *Wilson v. Asten-Hill Mfg. Co.,* 791 F.2d 30, 32n.3 (3d Cir. (1986) which states:

". . . Compare *Getz, v. Rohm and Haas Co.,* No. 576 (2563A) (Philadelphia, October 24, 1984), (exception not eliminated by 1972 amendment) with *Hogey v. Morello Excavating Co.,* 28 D. & C. 3d 451, 457 (1984), (exception no longer viable); Cf. *Higgins v. Cleaning Machine Corporation,* 344 Pa. Super. 325, 496 A.2d 818 (1985), (effect of 1972 amendment on intentional-tort exception is uncertain) . . ."

upon which *Readinger,* supra, was decided no longer exists. *Hogey v. Morello Excavating Company Inc.,* supra. Judge Nicholas in *Hogey* stated: "As to all injuries occurring in the scope and course of employment after 1972, such as decedent's, the Workmen's Compensation Act provides the exclusive remedy."

In eliminating the accident requirement and expanding the Workmen's Compensation Act's coverage to include all injuries arising in the course of employment, *Hinkle,* supra, the already narrow exception for intentional conduct by an employer, if not eliminated, certainly remains very limited and extends only to situations where there are clear allegations that it was the purpose of the employer to injure the employee. *Wilson v. Asten Hill Mfg. Co.,* 791 F.2d 30, 33 (3d Cir. 1986). For that reason we need not attempt to untangle the web of decisions dealing with the exception's continued validity, since, even assuming its continued validity, we find that Union Carbide has failed to state a claim that falls within the narrow intentional-tort exception.

The Supreme Court of Pennsylvania has dealt with the scope of the employer's intentional-tort exception just once, and then only implicitly. *Evans v. Allentown Portland Cement Co.,* 433 Pa. 595, 252 A.2d 646 (1969). The court in *Evans* held that despite allegations of an employer's willful and unlawful failure to provide safeguards on a conveyor system, the employee's sole remedy was under the Workmen's Compensation Act.

A more recent case to address the scope of the exception is *Wilson v. Asten-Hill Mfg. Co.,* supra. The court in *Wilson,* recognizing its role as a federal court sitting in diversity cases, stated:

(

"A federal court sitting in a diversity action must apply the substantive law of the state in which it sits and thus must predict how the highest state court would resolve the case. *Brown v. Caterpillar Tractor Co.*, 696 F.2d 246, 250 (3d Cir. 1982). In this case, we must predict whether the Pennsylvania Supreme Court would permit employees who are eligible for benefits under the Pennsylvania Workmen's Compensation and Occupational Disease acts to bring a third-party claim against their employer on an intentional tort theory predicated upon the allegations of the complaint in this case."

The complaint in the *Wilson* case alleged that the employer had long possessed medical and scientific data that clearly indicated that inhalation of asbestos dust and fibers in the course of the ordinary and forseeable use of its asbestos products was unreasonably dangerous and carcinogenic. This is not unlike the instant complaint where Union Carbide alleges that Automation knew that plaintiff and others were being injured from their exposure to radioactive materials as a result of the source cleaning method.

There were further allegations in *Wilson* that the employer withheld scientific data and disseminated outdated data, failed to provide warnings of known risks, and failed to test products adequately. *Wilson,* supra. Similarly, in the present case, there are allegations that the employer, Automation, actively concealed plaintiff's injuries from the Nuclear Regulatory Commission to prevent a shutdown.

Finally, the complaint in *Wilson* alleges that the employer acted wilfully, maliciously, callously, deliberately, and with wanton disregard for the rights, safety and position of plaintiffs and others similarly situated; and, that the employers had fraudulently

and deliberately exposed plaintiffs to asbestos fibers. *Wilson,* supra. So, too, the instant complaint alleges that Automation intentionally and deliberately exposed the plaintiff to the radioactive material.

The court in *Wilson* held that the allegations set forth by plaintiff in that case failed to state a claim within the intentional-tort exception. As the court stated: ". . . in the case at bar plaintiffs did not allege *that it was the purpose of the defendants to injure them." Wilson,* supra, (emphasis added). The *Wilson* court did not decide whether the exception survived the 1972 amendments, but rather assumed such for argument sake.

The court, in making its decision, relied heavily on *Higgins v. Clearing Machine Corporation,* 344 Pa. Super. 325, 496 A.2d 818 (1985), the most recent Superior Court case dealing with the scope of the exception. While we recognize that *Wilson* is a federal case anticipating state law and is not binding on us, we agree with its reasoning and its reliance on *Higgins,* the most recent Superior Court decision.

The issue before the court in *Higgins v. Clearing Machine Corporation,* supra, was to what extent the Pennsylvania Workmen's Compensation Act insulates an employer, as an additional defendant, from common law liability, on a claim of the original defendants for allegedly "intentional, wanton and willful" conduct resulting in serious injury to an employee. The original plaintiff in that case was injured while operating a punch press in the regular course of his employment. The allegations of defendants in their complaint against the employer, accepted as true for purposes of the appeal, were as follows:

"(1) Prior to the incident giving rise to the instant litigation, there were at least two incidents involving injuries to punch press operators at Kelsey-Hayes' facilities, resulting from a lack of appropriate equipment safeguards; (2) Kelsey-Hayes was fully aware, prior to Higgins' injury, that the operation of the unguarded punch press constituted a violation of the pertinent Occupational Safety and Health Administration ("OSHA") provisions and/or regulations; (3) Notwithstanding the foregoing, Kelsey-Hayes permitted Higgins to operate an unguarded punch press; and (4) The cause of Higgins' injury was the "intentional, wanton and willful" conduct of Kelsey-Hayes." *Higgins,* supra.

These allegations are nearly identical to those in the instant case. First, in *Higgins* as in our case, there are allegations that the employer knew of injuries to its employees resulting from unsafe procedures. Second, in both cases this dangerous procedure involving plaintiffs was intentionally and deliberately continued despite the knowledge of past injuries. Finally, in both cases there are allegations that the injury to plaintiffs was the result of the intentional conduct of the employer.

The court in *Higgins* found, as we must here, that the allegations were insufficient to find that the employer intended to injure plaintiff. The court pointed out that any intent on the employer's part developed out of their knowing failure to provide a safe workplace.

The *Higgins* court discussed both *Evans v. Allentown Portland Cement Company,* supra, and *Readinger v. Gottshall,* supra, stating that the two should not be viewed as inconsistent. Both involved an employer's deliberate or willful conduct. In *Readinger,* the employee was intentionally assault-

ed, while in *Evans*, the alleged intentional conduct was the employer's neglect of safety requirements. Perhaps the real difference between the two, although not explicitly stated by the court, was that one (*Evans*), was strictly related to the work place and arose "out of and in the course of employment," while the other, (*Readinger*), was an intentional assault appearing to be more outside the scope of employment. The court in *Higgins* viewed that case as being controlled by the language in *Evans*, reiterating that, "even where neglect of a statutory duty is alleged, the employee's only remedy is under the Workmen's Compensation Act." *Evans*, supra. Also, finding that the injury in *Higgins* arose "in the course of . . . employment," the court concluded that the appellants had failed to state a claim upon which relief could be granted.

Accordingly, with allegations clearly identical to those in *Higgins v. Clearing Machine Corporation*, supra, and *Wilson v. Asten-Hill Mfg. Co.*, supra, Union Carbide has failed to allege in its complaint facts sufficient to show that Automation, the employer, intended to injure plaintiff. The injury in this case clearly arose out of the workplace, and accordingly, the employer is immune under Pennsylvania's Workmen's Compensation Act. 77 P.S. §§411(1), 481. It is equally clear that this injury did not arise out of a personal dispute having nothing to do with the workplace and, therefore, it does not come under the statutory exception for injuries caused by third parties because of reasons personal to him. 77 P.S. §411(1).

In light of the foregoing discussion, this court's order, granting the motion for judgment on the pleadings of additional defendant, Automation Industries Inc., against defendant, Union Carbide Corporation, should be affirmed.